112  151
d117  589

CONTINENTAL FIRE INSURANCE CO. *v.* WHITAKER & DIL-
LARD.

*(Nashville.    December Term, 1903.)*

1. **INSURANCE.** Statute as to nonassessment insurance is not
vicious class legislation, and is valid under police powers.

The statute providing that no misrepresentations or warranty,
unless made with actual intent to deceive, or unless the risk
of loss is thereby increased, shall defeat or avoid an insurance
policy, is not vicious class legislation, but is a valid exercise
of the police power, though it applies only to nonassessment
insurance companies, and does not apply to assessment insur-
ance companies, and is not, for such reason, unconstitutional.
*(Post, pp.* 156-162.)

Code cited and construed:   Sec. 3306 (S.).

Acts cited and construed:   1895, ch. 160, sec. 22.

Cases cited and approved:   Light v. Insurance Co., 105 Tenn., 480;
Insurance Co. v. Stallings, 2 Cates, 1; Insurance Co. v. Bank &
Trust Co., 72 Fed., 413; White v. Insurance Co., 4 Dill. (Mo.),
177; Society v. Clements, 140 U. S., 226; Wall v. Society (C.
C.), 32 Fed., 273; Insurance Co. v. State, 153 U. S., 446; Reilly
v. Insurance Co., 43 Wis., 449; Insurance Co. v. Leslie, 47
Ohio St., 409; Hermany v. Association, 151 Pa., 17, 24; Albert
v. Insurance Co., 122 N. C., 92; Insurance Co. v. Rudwig, 80 Ky.,
223 (overruling Insurance Co. v. Curry, 13 Bush, 312); White
v. Society, 163 Mass., 108; Hogan v. Insurance Co., 164 Mass.,
448-450.

2. **SAME.** Nonassessment only embraced in Acts 1895, ch. 160.

Nonassessment insurance companies of all kinds are embraced
in Acts 1895, ch. 160, but no assessment company is embraced
in said act.   *(Post, pp.* 157-158.)

Acts cited and construed:   1895, ch. 160, secs. 9, 10, 13, 22; 1895, ch. 220; 1887, ch. 178.

3.  **SAME.**  Failure to observe fire-proof safe clause does not avoid policy.

A covenant and warranty contained in a fire insurance policy and in the application therefor that the insured will keep his books of accounts and inventories securely locked in a fire-proof safe at night, and when the building is not actually open for business, in some place not exposed to fire which would destroy the building, fall directly within the terms of the statute providing that no warranty made in the negotiation of a contract or policy of insurance, or in the application therefor, shall defeat or avoid the policy, unless made with actual intent to deceive, or unless the risk of loss is thereby increased; and a policy is not rendered void by such covenant and warranty.  (*Post, pp.* 162-164.)

Code cited and construed:   Sec. 3306 (S.).

Acts cited and construed:   1895, ch. 160, sec. 22.

4.  **SAME.**  Testimony showing that correct statements of insured were put down wrong by agent of insurer exonerates insured.

Where the applicant for insurance states a matter truly to the agent of the insurance company, but the agent puts it down wrong, and the application is signed by the applicant without reading same, it is competent to prove such facts, notwithstanding the application, and when such facts are proved, the insured is exonerated from the charge of misrepresentation.  (*Post, p.* 165.)

Cases cited and approved:   Insurance Co. v. Sorrels, 1 Bax., 352; Insurance Co. v. Bank, 88 Tenn., 369; McCarthy v. Catholic Knights, 102 Tenn., 345, 352; Light v. Insurance Co., 105 Tenn., 480; Insurance Co. v. Estes, 106 Tenn., 472.

Insurance Co. v. Whitaker.

5. **SAME. Same. Case in judgment as to legal title being in firm, when in one member only.**

Where the legal title or property insured is in one member of the firm, and not in the firm, and the agent of the insurance company is so informed, but he puts it down in the application as belonging to the firm, which application is signed without being read, testimony is competent to show the truth and to exonerate the insured from the charge of misrepresentation. (*Post, pp.* 165-166.)

See citations under headnote 4.

6. **SAME. Same. Case in judgment as to incumbrances.**

Where the insured makes no statements as to incumbrances, and signs the application, written by the agent of the insurance company, without reading it, he is not guilty of misrepresentation, though the application erroneously states that there were no incumbrances on the property. (*Post, pp.* 165-166.)

See citations under headnote 4.

7. **SAME. Misrepresentations as to incumbrances, such as liens, do not avoid policy.**

Misrepresentation as to incumbrances will not avoid a policy of insurance, because incumbrances or liens do not increase the risk, as the secured debt would remain after the destruction of the property. (*Post, p.* 166.)

Cases cited and approved: Light v. Insurance Co., 105 Tenn., 480; Insurance Co. v. Estes, 106 Tenn., 472.

8. **SAME. Delay in furnishing proofs of loss does not defeat suit, when.**

An action may be maintained upon an insurance policy providing that notice and proofs of loss must be furnished within certain time after loss, but not imposing a forfeiture for failure to furnish them within the prescribed time, though they are not furnished until after the time limited, but are furnished prior to the suit, and this is true though the policy provides that no action can be maintained until after a full compliance with such requirement. (*Post, pp.* 166-168.)

Insurance Co. v. Whitaker.

Cases cited and approved: Steele v. Insurance Co., 93 Mich., 81; Hall v. Insurance Co., 90 Mich., 403; Tubbs v. Insurance Co., 84 Mich., 646; Rynalski v. Insurance Co., 96 Mich., 395; Insurance Co. v. Brown (Ky.), 29 S. W., 313; Vangindertaelen v. Insurance Co., 82 Wis., 112; Flatley v. Insurance Co., 95 Wis., 618; Kahnweiler v. Insurance Co. (C. C.), 57 Fed., 562; Insurance Co. v. Downs, 90 Ky., 236; Insurance Association v. Evans, 102 Pa., 281; Taber v. Insurance Co., 124 Ala., 681; Rheims v. Insurance Co., 39 W. Va., 672; Shell v. Insurance Co., 60 Mo. App., 644; Insurance Co. v. Mattingly, 77 Tex., 162.

9. **SAME.** Statute imposing penalties for bad faith litigation is constitutional and valid.

A statute imposing a penalty not exceeding twenty-five per cent, upon insurance companies refusing, not in good faith, to pay their policies, and on the insured for bringing suit not in good faith, is constitutional and valid. There is such difference between insurance business and other kinds of business as to justify such statute. (*Post, pp.* 168-175.)

Act cited and construed: 1901, ch. 141, secs. 1 and 2.

Constitution of the United States cited and construed: 14th amendment.

Cases cited and approved: Insurance Co. v. Daggs, 172 U. S., 557; Insurance Co. v. Warren, 181 U. S., 73; Association v. Mettler, 185 U. S., 308; Insurance Co. v. Lewis, 187 U. S., 335; Insurance Co. v. Dobney, 189 U. S., 301.

## FROM BEDFORD.

Appeal from the Circuit Court of Bedford County.— W. C. HOUSTON, Judge.

THOMAS R. MYERS, for Insurance Co.

W. B. BATES and B. D. KINGREE, for Whitaker & Dillard.

———

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit was brought by Whitaker & Dillard, the defendants in error, in the circuit court of Bedford county, against the Continental Fire Insurance Company, seeking to recover on a policy issued by that company to them on May 21, 1901, insuring a storehouse at the sum of $100, with fixtures therein at $100, and a stock of merchandise therein at $1,500; in all $1,700.

The property was destroyed by fire on September 9, 1903.

The case was tried at the August term, 1903, of Bedford circuit court, when the jury rendered a verdict of $1,700, the full amount of the policy, and for the additional sum of $250 attorney's fees, under Acts 1901, p. 248, c. 141.

The insurance company has appealed and assigned errors.

The first error assigned is that there is no evidence to sustain the verdict. Under this are comprehended the following points, viz: That the defendants in error warranted that they owned the legal title to the property, whereas the testimony shows that they did not; that they warranted that the storehouse was unincumbered,

when in fact it was heavily incumbered; that the policy contained what is known as the "iron-safe clause," and the testimony shows that this was not complied with; that the policy provided that the proofs of loss should be furnished within 60 days from the date of the fire, and that this provision was not complied with. It is insisted that all of these were warranties by the terms of the policy, and a failure to comply with either of them avoided the policy.

Another assignment raises the question of the constitutionality of section 22 of the Tennessee Insurance Act of 1895 (chapter 160, p. 332, of the Acts of that year). This section is reproduced as section 3306 of Shannon's Code of Tennessee.

Other assignments raise the question of the constitutionality of chapter 141, p. 248, Acts 1901.

We shall consider these objections in the following order:

1. As to the constitutionality of section 22, c. 160, p. 332, Acts 1895 (Shannon's Code, section 3306).

This section reads as follows:

"No written or oral misrepresentation or warranty therein made in the negotiation of a contract or policy of insurance, or in the application therefor by the assured, or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter represented increase the risk of loss."

This section has been twice approved and applied in reported cases. *Light* v. *Ins. Co.*, 105 Tenn., 480, 58 S. W., 851, and *Hartford Life Ins. Co.* v. *Stallings* (Tenn.), 72 S. W., 960. In both of these cases the validity of the legislation was tacitly assumed, but in neither of them was the question of constitutionality directly raised. Some presumption of constitutionality, of course, arises from the above-mentioned decisions applying the law as a valid one; but this does not relieve us of the duty of considering and determining the question when directly made.

The section quoted is assailed on the ground that it is vicious class legislation. It is said that the classification is improper, in the first place, because the rule laid down limiting the power to make binding warranties capable of forfeiting the contract is confined to insurance companies alone; and, in the second place, that it does not apply to all kinds of insurance companies operating upon the assessment plan.

The title of the act of which section 22 is a part (chapter.160, p. 332, Acts 1895) indicates that it was passed for the purpose of laying down rules "to govern and regulate the business of insurance" "other than life and casualty insurance upon the assessment plan." The act applies to both foreign and domestic companies. The generality of the title, nothing else appearing, would justify the conclusion that it was intended to embrace all kinds of insurance except life insurance upon the assessment plan and casualty insurance upon

that plan; thus apparently including within its scope
fire insurance companies upon the assessment plan. An
attentive examination, however, of the body of the act
discloses the fact that its scope is not so broad. This
clearly appears from the provisions of sections 9 and
10, fixing the terms on which foreign fire companies may
do business, from which it appears that the act had in
contemplation only companies possessing a capital
stock. The same appears, in respect of domestic fire
insurance companies, from section 13. Moreover, as to
the latter the same result is reached by a comparison of
the act with chapter 220, p. 443, Acts 1895, which makes
provision for the business of mutual or assessment fire
insurance companies organized or incorporated under
the laws of this State. It does not appear that any pro-
vision is made in either of the acts for the business of
foreign fire companies of this character; that is, those
operating on the mutual or assessment plan. The busi-
ness of life and casualty companies operating upon this
plan is provided for by Acts 1887, p. 303, c. 178, and
Acts 1893, c. 6.

It seems, therefore, that the classification made by
chapter 160, p. 332, Acts 1895, is of all insurance com-
panies other than those operating on the mutual or
assessment plan. We have, then, on the one hand, non-
assessment companies; on the other, assessment com-
panies. To the first class the provisions of section 22,
above copied, apply; to the second class they do not
apply. Is there a good reason underlying the classifi-

Insurance Co. v. Whitaker.

cation? We think there is. It is obvious, without going into the particulars of the matter, that the two classes of companies operate on principles so radically different that different and distinct regulations are required for their management. Is there a good reason why the provisions of section 22 should be made to apply to the one class, and not to the other? A sufficient reason seems to be found in the diverse relations which the policy holders of the different classes bear to their respective companies. In the assessment companies each policy holder is an integral part of the whole. The members mutually insure each other. In them is vested the control and regulation of the affairs of the company. There is, therefore, in those companies not so great a tendency to oppression, and to the abuse of power, as in stock companies organized for the profit of its stockholders, who need not be policy holders. It may be well supposed that temptations to the abuse of power, so likely to arise in companies of the latter class, either would not arise at all in those of the former, or, if arising, would be corrected by the organization itself, the interest of each being, in a sense, that of all.

But, aside from this, if, upon the second division of the subject, it be found that section 22 is justified under the police power of the State, it would be immaterial that the legislature had determined to impose it upon policies issued by nonassessment companies, and had not chosen to do the same thing in respect of policies issued by assessment companies. If an act falls under the

police power, the legislature must judge of the objects upon which the statute shall operate. The court cannot declare it void on the ground that there are, in its opinion, other objects equally deserving of the attention of the legislature, which it has omitted to notice.

That legislation of this character is justifiable under the police power, there can now no longer be any doubt.

There was a similar statute passed in Pennsylvania on June 23, 1885 (P. L. 134), reading as follows: "Whenever the application for a policy of life insurance contains a warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application, made in good faith by the applicant shall effect a forfeiture or be a ground of defense in any suit brought upon any policy of insurance issued upon the face of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk." Speaking of this statute, in *Penn. Mut. Life Insurance Company* v. *Mechanics' Savings Bank & Trust Co.,* 72 Fed., 413, 19 C. C. A., 286, 38 L. R. A., 33, pending in the circuit court of appeals for the sixth circuit, TAFT, J., said: "That such statutes are remedial in their nature, and are quite within the police power of the legislature, is no longer a debatable question;" citing *White* v. *Insurance Co.,* 4 Dill., 177, Fed. Cas., No. 17,545; *Society* v. *Clements,* 140 U. S., 226, 11 Sup. Ct., 822, 35 L. Ed., 497; *Wall* v. *Assurance Society* (C. C.), 32 Fed., 273; *The Eagle Ins. Co. of Cincinnati* v. *State,* 153 U. S., 446, 14 Sup. Ct., 868, 38 L.

Ed., 778; *Reilly* v. *Ins. Co.,* 43 Wis., 449, 28 Am. Rep.,
552; *Insurance Company* v. *Leslie,* 47 Ohio St., 409, 24
N. E., 1072; 4 Thompson on Corporations, sections 5491,
5524.   In commenting upon a similar statute in Mis-
souri, DILLON, J., said:   "The legislature of Missouri
conceived, and, we think, wisely, that the promises held
forth to the assured in the policies in general use were
but too often a delusion and a snare, and, as the courts
were powerless to correct the evil, it ought to be cor-
rected by statute."     *White* v. *Conn. Mut. Life Ins. Co.,*
supra.

In speaking of a similar  statute  existing  in  New
Hampshire, the supreme court of that State, through
Foster, C. J., said:   "The policy  and  purpose  of  the
law were to promote honest and open fair dealing, to do
equal justice, to protect the confidence reposed by the
insured in those with whom he may contract, and (es-
pecially disclaiming any reference to this defendant
company), to spring the traps 'concealed in the mass of
rubbish, before the unwary traveler shall have put his
foot in them, to prevent and prohibit, in short, the farce
and fraud by which it has too often been found that the
party apparently insured by the stipulations written
upon one side of a piece of paper was uninsured by the
conditions involved in the 'insurance typography' in-
dorsed upon the other side of the same piece of paper."
See, also, *Hermany* v. *Life Association,* 151 Pa., 17, 24,
24 Atl., 1064; *Albert* v. *Insurance Co.,* 122 N. C., 92, 30
S. E., 327, 65 Am. St. Rep., 693; *Germania Ins. Company*

112 Tenn—11

v. *Rudwig,* 80 Ky., 223, overruling *Farmers' & Drovers'*
*Ins. Co.* v. *Curry,* 13 Bush, 312, 26 Am. Rep., 194; *White*
v. *Providence Savings Life Insurance Society,* 163 Mass.,
108, 39 N. E., 771, 27 L. R. A., 398; *Hogan* v. *Metropoli-*
*tan Life Ins. Co.,* 164 Mass., 448-450, 41 N. E., 663.

For the reasons stated, we hold that the section of our
insurance act quoted above is not unconstitutional.

2.    As to the iron-safe clause.

This clause in the policy reads as follows:

"The following covenant and warranty is hereby
made a part of this policy:    (1)    The assured will take
a complete itemized inventory of stock on hand at
least once in each calendar year, and unless such in-
ventory has been taken within twelve calendar months,
prior to the date of this policy, one shall be taken in
detail within thirty days of the issuance of this policy,
or this policy shall be null and void from this date,
and upon demand of the assured, the unearned premium
from such date shall be returned.    (2)    The assured
will keep a set of books, which shall clearly and plainly
present a complete record of business transactions, in-
cluding all purchases, sales and shipments, both for
cash and credit, from date of inventory as provided for
in the first section of this clause, and during the con-
tinuance of this policy.    (3)    The assured will keep
such books and inventories, and also the last preceding
inventory, if such has been taken, securely locked in a
fire-proof safe at night, and at all times when the build-
ing mentioned in this policy is not actually open for

business; or, failing in this, the assured will keep such books and inventories in some place not exposed to fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a bar to any recovery thereon."

The same thing appears in substance in the application, and is therein also denominated a "warranty."

If the foregoing provisions of the policy were binding as a warranty, and that warranty should be strictly construed, it would necessarily follow that the complainant could not recover, inasmuch as the testimony fails to show that the provisions referred to were fully complied with. It becomes pertinent, therefore, to pass upon the validity of the said provisions.

We are of the opinion that the said provisions fall directly within the terms of section 22, c. 160, p. 332, Acts 1895. It is not insisted that the representations contained therein were made with actual intent to deceive. It is also clear that the warranty, so-called, purporting to be contained within the clauses above mentioned, could not increase the risk of loss. The provisions referred to could be useful only in preserving for the insurance company, and for the insured as well, accurate evidence of the amount of the goods on hand at the date of the fire. Such evidence is no doubt highly desirable in all cases, and so far the provisions of the iron-safe clause are commendable; and it cannot

be doubted that in every case a failure to preserve books and papers, if not satisfactorily explained, would be a circumstance of great weight against the insured in estimating the amount of the loss. It cannot be said, therefore, that the requirements contained in the said iron-safe clause are wholly ineffectual and unimportant. It is true that under the terms of section 22 of the statute above referred to, they cannot be treated as warranties, and as avoiding the policy for failure to comply therewith. The statute must be read into the policy, and so much of the latter as is in conflict with the law so laid down, must be held as entirely nugatory as if never written. Still, after expunging so much of the language quoted as undertakes to create a warranty, making void the policy for failure to comply therewith, there yet remains a rational and valid agreement, failure to substantially comply with which imposes upon the insured the duty of making a satisfactory explanation; and a total failure to comply arouses such grounds of suspicion in the mind of the court as to require proof of a high degree of certainty to establish the amount of the loss. This was, in substance, the view taken by this court in the case of *I. Valensky* v. *Conn. Fire Ins. Co.,* decided at Knoxville during the year 1901.

In the present case it appears there was a reasonable compliance with the terms contained in the iron-safe clause, and the testimony clearly shows that the loss was as great as the recovery allowed in the court below.

Insurance Co. v. Whitaker.

3. As to misrepresentations concerning the legal title.

The application states that the legal title was in the firm of Whitaker & Dillard, the assured. The testimony, however, shows that Mr. Whitaker stated the matter truly to the agent of the company—that is, that he owned the property, and not the firm; but the agent who wrote the application put it down in the manner stated, and this application was never read over by either Whitaker or Dillard. On the contrary, trusting to the correctness of the agent, whom they knew well, they signed it without reading it. It has been held in this State that it is competent to introduce such testimony, notwithstanding the application, and that, upon such facts being proven, the insured is exonerated from the charge of misrepresentation. *Insurance Co.* v. *Sorrels,* 1 Baxt., 352, 25 Am. Rep., 780; *Insurance Co.* v. *National Bank,* 88 Tenn., 369, 12 S. W., 915; *McCarthy* v. *Catholic Knights,* 102 Tenn., 345, 352, 52 S. W., 142, and authorities cited. See, also, *Light* v. *Insurance Co.,* 105 Tenn., 480, 58 S. W., 851, and *Insurance Co.* v. *Estes,* 106 Tenn., 472, 62 S. W., 149, 82 Am. St. Rep., 892, 52 L. R. A., 915.

4. As to the incumbrance upon the storehouse.

The application states that there were no incumbrances, but the testimony shows that the storehouse and the lot on which it was situated were heavily incumbered.

The policy was not avoided by this conflict between the application and the facts as existing at the time, for

the reason stated in the preceding division, namely, because it appears that the application was written by the company's agent, and was not read over by the applicants; and, further, that they did not in fact make any statement to the agent that the property was unincumbered. Moreover, it was held in the two cases last cited that a misrepresentation as to incumbrances would not avoid the policy, because such liens do not increase the risk, as the secured debt would remain after the destruction of the property. *Light* v. *Insurance Company*, supra, and *Insurance Company* v. *Estes*, supra.

5. As to the proofs of loss.

The policy contains the following: "The sum for which this company is liable pursuant to this policy shall be payable sixty days after notice, ascertainment, estimate, satisfactory proof of the loss having been received by this company in accordance with the terms of the policy. . . . If fire occur the insured shall . . . within sixty days after the fire, unless such time is extended in writing," make proofs of loss. "The loss loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required, have been received by this company," etc. "No suit or action on this policy for the recovery of any claim, shall be sustainable in any court of law or equity, until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months after the fire."

No forfeiture is provided for in the policy for failure

to furnish the proofs of loss within sixty days next after the fire, although there are many other acts referred to in the policy, and omissions also referred to therein, for which forfeitures are provided.

In the present case the proofs of loss were furnished within sixty-nine days after the fire, but not within sixty days. The suit was not brought until the expiration of sixty days from the filing of the proofs of loss, and it was brought within twelve months after the fire.

The rule laid down in Joyce on Insurance applicable to this state of facts is as follows:

"If a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose forfeiture for a failure to comply with other provisions of the contract, the insured may, it is held, maintain an action, though he does not furnish proofs within the time designated, provided he does furnish them at some time prior to commencing the action upon the policy. And this has been held to be true even though the policy provide that no action can be maintained until after a full compliance with all the requirements thereof."

We regard this as a sound statement of the law, and adopt it. It is supported by numerous authorities. *Steele* v. *German Ins. Co.*, 93 Mich., 81, 53 N. W., 514, 18 L. R. A., 85; *Hall* v. *Concordia F. Insurance Co.*, 90 Mich., 403, 51 N. W., 524; *Tubbs* v. *Dwelling House*

*Ins. Co.,* 84 Mich., 646, 48 N. W., 296; *Rynalski* v. *Ins. Co.,* 96 Mich., 395, 55 N. W., 981; *German Ins. Co.* v. *Brown* (Ky), 29 S. W., 313; *Vangindertaelen* v. *Phoenix Insurance Company,* 82 Wis., 112, 51 S. W., 1122, 33 Am. St. Rep. 29; *Flatley* v. *Phoenix Insurance Company,* 95 Wis., 618, 70 N. W., 828; *Kahnweiler* v. *Phoenix Insurance Company* (C. C.), 57 Fed., 562; *Kenton Ins. Co.* v. *Downs,* 90 Ky., 236, 13 S. W., 882; *Coventry Mut. Live Stock Ins. Association* v. *Evans,* 102 Pa., 281; *Taber* v. *Royal Ins. Co.,* 124 Iowa, 681, 98 N. W. —; *Rheims* v. *Standard F. Ins. Co.,* 39 W. Va., 672, 20 S. E., 670; *Shell* v. *German Insurance Co.,* 60 Mo. App., 644; *Sun Mut. Ins. Company* v. *Mattingly,* 77 Tex., 162, 13 S. W., 1016.

We are of opinion, therefore, that the case of defendants in error was not barred by their failure to furnish the proofs of loss.

6. As to the constitutionality of chapter 141, p. 248, Acts 1901.

This act, so far as necessary to be quoted, reads as follows:

"Section 1. The several insurance companies of this State, and foreign insurance companies, and other corporations, firms, or persons doing insurance business in this State, in all cases when a loss occurs and they refuse to pay the same within sixty days after a demand shall have been made by the holder of said policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss and interest

thereon, a sum not exceeding twenty-five per cent. on the liability for said loss: provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss or injury upon the holder of said policy: and, provided, further, that said additional liability within the limit prescribed shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss and injury thus entailed.

"Sec. 2.   In the event it shall be made to appear to the court or jury trying the cause that the action of said policy holder in bringing said suit was not in good faith, and recovery under said policy shall not be had, said policy holder shall be liable to such insurance companies, corporations, firms, or persons in a sum not exceeding twenty-five per cent. of the amount of loss claimed under said policy: provided, that such liability, within the limits prescribed, shall, in the discretion of the court or jury trying the cause, be measured by the additional expense, loss or injury inflicted upon said insurance companies, corporations, firms or persons by reason of said suit."

It is insisted that the foregoing act is unconstitutional, because no other business except that of insurance is onerated in a similar manner.   This objection assumes that there is no such difference between insurance business and other kinds as would justify a different regulation in respect of the former; and, further-

more, that there can be no burden placed by law upon one business which is not at the same time imposed upon all other kinds.   Both assumptions are unsound—understanding by the use of the term "burdens" in the latter assumption, matters in the nature of regulations. We need not discuss the second division of the inquiry. It seems clear that there is a sufficient difference between insurance contracts and others to authorize the provisions of the statute.   No one would carry insurance except for the indemnity that contracts of this character provide.   The burden is a heavy one, and an enormous tax upon individual incomes and upon the whole country as well.   This heavy sacrifice is endured through long series of years, with the just expectation that upon the maturity of the contract, insurance companies will promptly and honestly comply with their agreement to pay the indemnity; and this payment is usually of very great importance to policy holders, not only in the respect of the amount involved, but also in the promptness of the payment.   The maturity of these contracts most generally arrives when the beneficiary of them are in dire need.   A man's dwellinghouse has been destroyed, and he has no means of providing shelter for his family.   His storehouse and goods have been consumed by fire, and his business is ruined unless he can promptly recover his insurance.   The head of a family dies, and his widow and little ones are left without the means of support, unless they can promptly obtain the relief which the husband and father pro-

Insurance Co. v. Whitaker.

vided for them through long years of toil and sacrifice in paying insurance premiums. When people, under such conditions, are met by heartbreaking delays induced by the attempt of the companies to enforce upon them through litigation the technical defenses crouched in the jungle of fine print with which these policies are overgrown, and they are compelled to employ counsel and undergo other expense to enable them to maintain their rights and secure a just settlement on a fair and reasonable basis, it is neither unconstitutional, nor improper from any point of view, that the legislature should pass a law one of the purposes of which is to protect the policy holder from the expenses so made necessary by the action of the insurance company when it shall be made to appear that the defense is not made in good faith. Evenhanded justice is dispensed to the companies in the second section, which provides for a similar recovery of expenses in their favor against the policy holder if it shall appear that he has not brought suit in good faith.

Statutes even more stringent than our own, in that they do not contain the compensating provisions of the second section of our act, have been sustained as constitutional by the supreme court of the United States. These statutes are set out and discussed in the following cases: *Fidelity Mut. Life Ass'n of Philadelphia* v. *Mettler,* 185 U. S., 308, 22 Sup. Ct., 662, 46 L. Ed., 922; *Iowa Life Ins. Co.* v. *Lewis,* 187 U. S., 335, 23 Sup. Ct.,

126, 47 L. Ed., 204; *Farmers & Merchants Ins. Company* v. *Dobney,* 189 U. S., 301, 23 Sup. Ct., 565, 47 L. Ed., 821.

We shall refer especially to only the latest of these cases. In that case the supreme court had before it a statute of Nebraska, the forty-fifth section of which was as follows: "The court, upon rendering judgment against an insurance company upon any such policy of insurance, shall allow the plaintiff a reasonable sum as an attorneys' fee to be taxed as part of the costs." Comp. St. 1903, c. 43.

Speaking to this section, the court, through Mr. Justice White, said:

"All the grounds relied upon to demonstrate that the statute allowing a reasonable attorney's fee in case of the unsuccessful defense of a suit to enforce certain insurance polices is repugnant to the equality clause of the fourteenth amendment are embraced in the following proposition: First, because it arbitrarily subjects insurance companies to a liability for attorney's fees when other defendants in other classes of cases are not subjected to such burden; second, because, whilst the obligation to pay attorney's fees is imposed on insurance companies in the cases embraced by the statute, no such burden rests on the plaintiff in favor of the insurance companies where the suit on a policy is successfully defended; and, third, because the statute arbitrarily distinguishes between insurance policies by allowing an attorney's fee in case of a suit on a policy cov-

ering real estate, where the property has been totally destroyed, and excluding the right to such fees in suits to enforce policies on other classes of property, or where there has not been a total destruction of the property covered by the insurance. Each and all of these propositions must rest on the assumption that contracts of insurance, generically considered, do not possess such distinctive attributes as to justify their classification separate from other contracts, and that contracts of insurance, as between themselves, may not be classified separately, depending upon the nature of the insurance, the character of the property covered, and the extent of the loss which may have supervened. But the unsoundness of these propositions is settled by the previous adjudications of this court. *Orient Insurance Co.* v. *Daggs,* 172 U. S., 557, 19 Sup. Ct., 281, 43 L. Ed., 552; *John Hancock Mut. Life Ins. Co.* v. *Warren,* 181 U. S., 73, 21 Sup. Ct., 535, 45 L. Ed., 955; *Fidelity Mut. Life Ass'n* v. *Mettle,* 185 U. S., 308, 22 Sup. Ct., 662, 46 L. Ed., 922. In the Orient case a statue of the State of Missouri, which subjected fire insurance contracts to an exceptional rule, was upheld, not only on the ground of the right of the State to prescribe the conditions upon which an insurance company should transact business within its borders, but also the rule in question was the lawful exercise of the power to classify. In the Warren case a like principle was applied to a statute of the State of Ohio establishing a particular regulation as to life insurance companies. In the Mettler case a

statute of the State of Texas was sustained, applicable alone to life insurance company policies, which authorized the enforcement not only of a reasonable attorney's fee, but also of twelve per cent. damages after demand, in case of the unsuccessful defense of a suit to enforce a life insurance policy. In all three of the cases referred to, therefore, it was necessarily held that insurance contracts were so distinct as to justify legislative classification apart from other contracts, or to authorize a classification of insurance contracts so as to subject one character of such contracts, when put in one class, to one rule, and other varieties of such contracts, when placed in another class, to a different rule. The only claimed distinction between the cases previously decided and the present one is that in this case the classification is made to depend, not alone upon the general character of the contract, but upon the kind of property insured and the extent of the loss. This, it is elaborately argued, takes this case out of the rule established by the previous cases, and causes the statute to be repugnant to the fourteenth amendment. But, as the rule settled by the previous cases is that contracts of insurance from their very nature are susceptible of classification, not only apart from other contracts, but from each other, it must follow, as the lesser is included in the greater, that the character of the property insured and the extent of the loss afford reasons for subclassification."

We are of opinion, therefore, that the act referred to is a constitutional and valid law.

Insurance Co. v. Whitaker.

As previously stated, under this act the jury allowed $250 as attorney's fees, and this verdict was approved by the court below, and judgment rendered thereon. There was no error in this action of the court.

None of the assignments of error being well taken, and no error being found in the action of the court below, the judgment must be affirmed, with costs.