HUGHES BROS. *et al. v.* ÆTNA INS. CO. *et al.**

(*Knoxville.* September Term, 1923.)

1. **INSURANCE.** Iron safe clauses must be substantially complied with.

Iron safe clauses in fire policies on stocks of merchandise must be substantially complied with, and, though expert bookkeeping is not required, the insured must keep such books as will fairly show to a man of ordinary intelligence all purchases and all sales, both for cash and credit, and make an effort, at least, to keep such books in a safe place. (*Post, pp.* 293-300.)

2. **INSURANCE.** Iron safe clause held to preclude recovery in view of failure to keep record of credit sales in safe.

Where general merchants did not keep books showing cash sales, and did not keep books showing credit sales in the safe, so that the value of the stock, at the time of the fire destroying the books showing credit sales, could only be proved by parol evidence as to value of stock on hand and as to portion of bank deposits representing cash sales, an iron safe clause of the fire policy precluded recovery, notwithstanding Thompson-Shannon Code, section 3006, making warranties immaterial unless the matter represented increased the risk of loss. (*Post, pp.* 298-300.)

Cases cited and approved: McNutt v. Virginia F. & M. Ins. Co., 45 S. W., 61; Insurance Co. v. Whitaker, 112 Tenn., 151; Liverpool, etc., Ins. Co. v. Kearney, 180 U. S., 132; Volunteer State Life & Ins. Co. v. Richardson, 146 Tenn., 589; Mutual Life Ins. Co. v. Dibrell, 137 Tenn., 529.

Code cited and construed: Sec. 3306 (T.-S.).

3. **INSURANCE.** Rule as to materiality of representation or warranty under statutes requiring them to "increase risk of loss" stated.

---

*On condition in fire insurance policy as to keeping, producing, and preserving books and papers, see note in 51 L. R. A., 698.

As to what books and inventories must be kept in a safe to comply with the requirements of the iron-safe clause, see note in 15 L. R. A. (N. S.), 471.

Hughes Bros. v. Aetna Ins. Co.

A representation or warranty increases the risk of loss, within Thompson-Shannon Code, section 3306, making a misrepresentation of warranty immaterial "unless the matter represented increased the risk of loss," if the representation relates to a matter of sufficient importance to naturally and reasonably influence the judgment of insurer in making the contract. (*Post, p.* 301.)

4. **INSURANCE.** Statute as to materiality of misrepresentation or warranty held applicable to a promissory warranty.

Thompson-Shannon Code, section 3306, making a "misrepresentation or warranty" immaterial unless made with actual intent to deceive, or unless the matter represented increased the risk of loss, *held* applicable to a promissory warranty. (*Post, p.* 301.)

5. **PLEADING.** Permitting amendment of insurer's answer so as to rely on iron safe clause held not error.

In action on fire policy, commenced after the insurer had notified the insured that payment was resisted because of noncompliance with iron safe clause, the court did not err in permitting the insurers to amend answer so as to rely on the iron safe clause. (*Post, p.* 302.)

BACHMAN, J., dissenting.

Case cited and approved: Real Estate Co. v. Kyoleum Co., 142 Tenn.. 295;

Case cited and distinguished: Snyder v. Mystic Circle, 122 Tenn., 250.

---

FROM WASHINGTON.

---

Appeal from the Chancery Court of Washington County.—HON. HAL H. HAYNES, Chancellor.

Cox & TAYLOR, for Hughes Bros. and others.

MILLER & DEPEW, for Ætna Ins. Co.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Hughes Bros. were general merchants in the village of Elk Park, N. C. Their store was destroyed by fire November 2, 1921. Prior to that time, on July 26, 1921, policies of insurance aggregating $12,000, covering their stock, written by defendant companies were issued to Hughes Bros.

After the fire, the complainants Hughes Bros. made demand upon the defendants, Ætna Insurance Company and others, to settle the loss, which demand was finally refused. Hughes Bros. were considerably indebted, and assigned their rights under the several policies to Thad A. Cox, trustee for their creditors, and Hughes Bros., joined by the said trustee, bought this suit to recover the full amount of the said policies with statutory penalty.

Some exception to the jurisdiction was taken by one of defendant companies, but we infer that all of them finally answered. Proof was taken, and there was a decree in favor of the complainants for the full amount of the policies with a penalty of fifteen per cent. from which decree the defendants have appealed to this court.

The principal defense made is that Hughes Bros. did not comply with the "iron safe clause" contained in all the policies. This clause is as follows:

"The following covenant and warranty is hereby made a part of this policy:

"First. The assured will take a complete itemized inventory of stock on hand at least once in each calendar

year, and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"Second. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and during the continuance of this policy.

Third. The assured will keep such books and inventory and also the last preceding inventory if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The proof shows that Hughes Bros. took an inventory February 1, 1921, This indicated the cost of their stock was $15,142.11. They had an iron safe in their store, and a book into which this inventory had been transcribed was preserved in the safe. They preserved also some other records indicating their purchases. They did not keep any book, however, showing their cash sales, nor did they keep any book showing their credit sales. Their credit

sales were kept on what is known as a McCaskey register, which was too large to be put in the safe, and was destroyed in the fire.

After the fire it resulted that Hughes Bros. had no record whatever of their credit sales. They attempted to arrive at the amount of their cash sales by producing their bank book, and by parol testimony tending to show what portion of their bank deposits arose from cash sales.

D. H. Hughes undertook to show the amount of stock on hand and the amount of the loss, it being conceded that the loss was total. He added to the invoice value of goods on hand February 1, 1921, the value of goods purchased between that date and the date of the fire. He took the amount of deposits shown by the firm's bank book during that period (less certain deposits derived from outside sources), and deducted from this sum twenty-five per cent. thereof, which he said was the average profit. The remainder he said showed the invoice value of goods sold for cash. Substracting the sum last mentioned from the aggregate of the inventory of February, 1, 1921, and subsequent purchases, according to D. H. Hughes, made the value of the stock on hand at the time of the fire $22,272.01. He said that his McClaskey register just previous to the fire showed credit sales of $5,800. But he further said that he had collected about an equal sum from goods sold previous to the inventory of February 1, 1921, which collections went in with his bank deposits, treated as above as indicating cash sales, and he offset these amounts against each other. He did not charge his stock with credit sales after inventory, nor credit it with the old collections deposited with his cash.

F. W. Hughes corroborates the foregoing testimony of

his brother in its essential particulars, and also concludes that the value of the stock on hand at the time of the fire was between $22,000 and $23,000.

A number of witnesses living in the neighborhood of Elk Park, all of whom profess to have been familiar with the stock of goods of Hughes Bros., and some of whom appear to have had considerable experience in merchandising and appraising stocks of merchandise, testify in the case, and estimate the value of the Hughes Bros. stock when destroyed from $15,000 to $20,000.

The insurance companies introduced no proof.

The iron safe clause ordinarily contained in fire insurance policies covering risks of this sort has been frequently considered by this court and other courts, and is almost uniformly held to be fair and reasonable, and consequently valid and enforceable. 14 R. C. L., 1139; 26 C. J., 249. See, also, cases collected in notes, 9 Ann. Cas., 466; Ann. Cas., 1913C, 1221; 51 L. R. A., 699; 15 L. R. A. (N. S.), 471.

This court has considered this clause in *McNutt* v. *Virginia F. & M. Ins. Co.* (Tenn. Ct. App.), 45 S. W., 61, *Insurance Co.* v. *Whitaker,* 112 Tenn., 151, 79 S. W., 119, 64 L. R. A., 451, 105 Am. St. Rep., 916, and in several unreported cases.

Such a clause is necessary in a contract of insurance on a fluctuating stock to protect the insurer against the fallability or dishonesty of the insured. Such records, showing the amount and value of goods acquired and the amount and value of goods sold, enable the insurer to tell with approximate accuracy, the amount and value of goods on hand at the time of the loss. Without such records

the insurer has no protection whatever against false or partial estimates of the insured and his friends. The amount of the loss becomes a question of guesswork, and the answer often depends on the testimony of biased witnesses.

In the case before us we have only the word of the Hughes brothers as to the amount of goods sold on credit and the consequent depletion of the stock by credit sales. Their own testimony shows that the bank deposits did not correspond with their cash sales. Deposits were made from other sources. Moreover, they lived out of the store, and some bills were paid in cash. One of the brothers says that their living expenses were charged on the McClaskey register. Another says that the McClaskey register contained only accounts of merchandise sold on credit.

The testimony of the neighbors as to the value of stock on hand is confessedly speculative. None of these witnesses ever checked up the stock nor made any appraisal thereof. They could not know without detailed examination what the value of the stock was. As tending to show the unreliability of such testimony, these witnesses vary in their estimates as much as $5,000.

Fair dealing and sound policy does not require that insurance companies be required to settle their losses upon such proof as this. It is permissible for insurers to protect themselves against such a situation, and for this reason the iron safe provision in contracts of insurance has been everywhere thought reasonable. A substantial compliance with this provision must be exacted. Expert bookkeeping is not required, but it is competent to require the keeping of such books as will fairly show to a man

of ordinary intelligence all purchases and all sales both for cash and credit, and it is competent to require an effort, at least, to keep such books in a safe place. *McNutt* v. *Virginia F. & M. Ins. Co.*, supra; *Liverpool, etc., Ins. Co.* v. *Kearney*, 180 U. S., 132, 21 Sup. Ct., 326, 45 L. Ed., 460, and authorities cited above.

The chancellor was of opinion that section 22, chapter 160, of the Acts of 1895 (Thompson's Shannon's Code, section 3306) relieved Hughes Bros. of the obligation discussed. The section of the statute mentioned is as follows:

"No written or oral misrepresentation or warranty therein made in the negotiation of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter represented increased the risk of loss."

It was held in *Insurance Co.* v. *Whitaker*, supra, that the statute quoted controlled the application of the iron safe clause, and it was said in that case that the proof showed a reasonable compliance with the terms of said clause, and also that the loss was as great as the recovery allowed.

The authority of *Insurance Co.* v. *Whitaker* cannot avail the complainants here. In the present case, as we have seen, there was no reasonable or substantial compliance with the terms of the iron safe clause. No books whatever were kept showing cash sales, and no record of credit sales was kept in a safe place nor any attempt made to do so. Stock on hand could only be shown by the estimates of the insured and their friends and neighbors.

Section 3306 of Thompson's Shannon's Code has been considered very thoroughly in two late cases. *Volunteer State Life & Ins. Co.* v. *Richardson,* 146 Tenn., 589, 244 S. W., 44; *Mutual Life Ins. Co.* v. *Dibrell,* 137 Tenn., 529, 194 S. W., 581, L. R. A., 1917E, 554.

These cases show that the thing misrepresented need not necessarily be one that increases the hazard in the sense that it actually occasions or contributes to the loss. If on the contrary the matter misrepresented "increases the risk" involved in the issuance of the policy, in the judgment of the court, then it may avoid the contract. Although the insured in *Volunteer State Life & Insurance Company* v. *Richardson,* supra, did not die from the effects of strong drink, nevertheless, had the insurer not been misinformed about his drinking habits, the policy would not have issued, and it was held that the misrepresentation increased the risk and defeated recovery.

The substance of these cases is that a misrepresentation about any matter of sufficient importance, in the opinion of the court, to naturally and reasonably influence the judgment of the insurer in making the contract, is a misrepresentation that "increases the risk of loss" within the sense of our statute.

It can scarcely be urged that these insurance companies would have undertaken these contracts at all if they had known that no records of sales were to be preserved by Hughes Bros.

While taking its language literally, section 3306, Thompson's Shannon's Code would seem not to apply to a promissory warranty, still, such a scope has been given the statute in *Insurance Co.* v. *Whitaker,* supra, and we are satisfied to adhere to this ruling. Otherwise a just recovery

might be defeated by some immaterial consideration made the basis of such a warranty.

We see no error in the action of the chancellor, permitting the defendants to amend their answer, and by this amendment rely on the iron safe clause. The rule announced in *Snyder* v. *Mystic Circle,* 122 Tenn., 250, 122 S. W., 981, 45 L. R. A. (N. S.), 209, is that a party having given a reason for his conduct about a matter in controversy is estopped after litigation is begun from changing his ground. No such situation is here presented. Complainants were notified before litigation by letter from defendants' counsel that defendants resisted payment of the policies on the ground that there had been no compliance with the iron safe clause. The original answer filed by the defendants is somewhat obscure, and it is difficult to say what defenses are made thereby. We do not, however, see any particular inconsistency between the answer and the amendment thereto.

Speaking of the holding in *Snyder* v. *Mystic Circle,* supra, just mentioned, in a late case we said: "We think it may be said that the rule urged by the complainant is of doubtful application in any case, unless the former position is inconsistent with the position adopted after litigation, or unless the adverse party had been misled, or is prejudiced by the change of attitude." *Real Estate Co.* v. *Kyoleum Co.,* 142 Tenn., 295, 218 S. W., 821, 14 A. L. R., 944.

What we have said makes it unnecessary to consider other questions in the case.

For the reasons stated, the decree of the chancellor will be reversed, and this bill dismissed.

BACHMAN, J., dissents.