## G. E. CATES, et al. v. FIDELITY-PHOENIX INS. CO.

Eastern Section. February 30, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

514

R. Lee Bartels, of Memphis, for appellant.

W. C. Patton, of Halls, and Craig & Durham, of Ripley, for appellee.

SENTER, J. The bill was filed in this cause to recover on a fire insurance policy issued by defendant to complainant covering on a stock of drugs and the store fixtures and furnishings, including soda fountain equipment; $2500 on stock of merchandise, $900 on office furniture and fixtures, $600 on the soda fountain and appliances. The defendant filed a petition for removal to the federal court, and upon the petition being sustained, complainant took a nonsuit, and reinstituted the suit in Lauderdale county for the sum of $2999.50, so as to bring the suit within the jurisdiction of the chancery court of Lauderdale county.

The only question made by the defendant is the alleged failure of complainant to comply with the iron safe clause or provision contained in the policy. The Chancellor held that under the facts there had been a substantial compliance by complainant with the iron safe clause, and that the value of the stock of merchandise, the store fixtures and the soda fount, etc., exceeded the amount sued for after applying the three-quarter value clause contained in the policy, and rendered a judgment in favor of complainant and against the defendant for the sum of $2999.50, the amount sued for, plus interest thereon from December 18, 1925, making the aggregate sum of $3337.50. From the decree of the Chancellor the defendant has appealed to this court, and has assigned numerous errors. To certain of the finding of facts by the Chancellor the complainant excepted, and has filed the record for error, and has assigned errors, all of which go to the finding of certain facts and rulings by the court on certain matters of evidence.

The record shows that the stock of merchandise, store fixtures and the soda fountain, was totally destroyed by fire on Sunday night, October 18, 1925, at about 8:30 or 9:00 o'clock. The fire did not originate in the building occupied by complainant, but originated in an adjoining storehouse. It appears that a few minutes before the fire was discovered in the adjoining storehouse, complainant's clerk left the drug store at the invitation of a friend to drive a distance of about a mile and one-half, and to be gone but a few minutes. Before leaving the store he locked the back door and left the lights in the store burning, and locked the front door, with the intention of returning in a short while, and put the books into the iron safe and closed the store for the night. In a few minutes after he left the store, fire was discovered in the adjoining storehouse, and before

complainant's clerk got back from the short trip he made with his friend, the fire had broken through into the store of complainant, and because of the intense heat the clerk was unable to enter the store and get the books out. The clerk had only been gone about fifteen minutes, but the fire had gained such headway in the adjoining building that it had broken through the partition wall and was burning furiously in the storehouse of complainant.

The Chancellor held that under these facts the store was not open for business at the time of the fire, and this holding of the Chancellor is made the basis of an assignment of error by complainant. This question will be later discussed in this opinion.

The iron safe clause contained in the policy of insurance sued on was in the usual form, and as follows:

"Inventory-Iron Safe Clause—(Requirement to keep books and inventory). It is made a condition of this insurance: (1) That the assured under this policy shall take an inventory of the stock and other personal property hereby insured at least once every twelve months during the term of this policy, and unless such inventory has been taken within one year prior to the date of this policy, one should be taken in detail within thirty (30) days thereafter; (2) That the assured shall keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit; (3) That the assured shall keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store mentioned in the within policy is not actually open for business; (4) That in case of loss the assured shall produce such books and last inventory."

It appears from the record that the complainant had a fireproof iron safe in the storehouse in which he was accustomed to keep his books and papers. The books kept ordinarily in the safe consisted of a ledger, on which was entered all credit sales, and a copy of the last inventory, itemized, which had been transcribed from the inventory sheets into the ledger; all wholesale accounts, showing merchandise purchased and from whom and the amounts thereof; a cash book showing the amount of each day's cash sales. The cash book so kept did not set out in detail the items sold, but did set out the amount of the daily sales or cash receipts, and the ledger, on which were entered all credit sales, was in the form of an account book showing the accounts of the various customers, and would show not only the items sold to the respective customers but would show any payments made on the respective accounts by customers, this much is fairly inferable from the record. At the time of the fire the ledger on which had been transcribed the last inventory taken, and in itemized form, and which also showed the wholesale accounts

representing purchases made by complainant from time to time, was not in the iron safe, and neither was the cash book which showed the daily cash receipts. The ledger or credit account book, showing the credit sales to various customers, the dates and' items of the respective sales, and also showing the aggregate of the last inventory, but not the itemized inventory, and perhaps some other documents unnecessary to refer to, were in the iron safe at the time the fire occurred. The other books usually kept in the iron safe, except during business hours, had not been put in the safe at the time the clerk left the store to make the short trip in an automobile at the invitation of a friend. He had locked the store door, but left the lights burning, with the intention of returning in a short while to put the books into the safe and to close the store for the night.

The first question presented by the defendant on this appeal is with reference to the sufficiency of the books and records usually kept in the iron safe by complainant. It being the contention of defendant on that matter that a compliance with the second provision in the iron safe clause required that complainant should keep a cash book showing the items sold for cash. We do not think that this contention is well taken. If the cash book showed the amount of each day's sales, we think it would be in substantial compliance with the provision in the iron safe clause referred to. Whatever may be the rule in other jurisdictions, we think that it is well settled by the decisions of the Supreme Court of this State, and especially under the construction given to section 22, chapter 160 of the Acts of 1895, that the rule of substantial compliance applies. (Ins. Co. v. Whitaker, 112 Tenn., 151, 79 S. W., 119; 64 L. R. A., 451; McNutt v. Virginia F. & M. Ins. Co. (Tenn. Ct. App.), 45 S. W., 61, and cases cited.)

We are of the opinion that complainant had fully complied, in a substantial way, with the provisions of the iron safe clause as to the books and records, and the manner of keeping the books and accounts in an iron safe. The serious question presented by defendant on this appeal is with reference to certain of these necessary books and records being out of the safe at the time the fire occurred. This case is very similar to the facts in McNutt v. Virginia F. & M. Ins. Co., supra. Both parties have filed excellent briefs in support of their respective contentions. In the excellently prepared brief of the defendant much stress is put upon the importance of literal compliance with all the provisions of the iron safe clause, as being in the contemplation of the parties to the contract of insurance, and many cases and authorities are cited. There seems to be a decided conflict among the appellate courts of the various States. In many jurisdictions the rule of rigid construction is employed in applying the iron safe clause similar to the one contained in the policy sued on

in this case, but an examination of these cases discloses that no attempt by the assured was made to comply with the provisions, or such an insufficient compliance as to be held equivalent to no compliance at all. (Huff v. Ins. Co., 110 Va., 585; Phoenix Ins. Co. v. Sherman, 110 Va., 435, 66 S. E., 81; Delaware Ins. Co. v. Munger (Tex.), 74 S. W., 792.)

Our own case of Hughes Bros. v. Aetna Ins. Co., 148 Tenn., 293, is relied upon by defendant in support of its contention in the present case. The case of Hughes Bros. v. Aetna Ins. Co., when read in connection with other cases by the Supreme Court of this State (McNutt v. Va. F. & M. Ins. Co., supra, and Ins. Co. v. Whitaker, supra) is distinguished from this case, in that there was no compliance or effort to comply with that provision of the iron safe clause requiring the assured to keep his book of credit sales in a fireproof safe. In that case it appears that the assured used what is referred to as the McCaskey system for its credit sales. This system employs a large cabinet with drawers and compartments in the drawers where the accounts of customers are kept on tickets, and the tickets are made with the use of carbon backs so that a duplicate or copy of the ticket is furnished the customer at the time of sale, and the original ticket of the sale is kept and preserved in the cabinet, and in the compartment of the cabinet for the particular customer. It is a well-known fact that many retail merchants, especially grocery merchants, use this system, and do not keep a ledger account of credit sales, or an account book of credit sales. The Supreme Court held in the Hughes case that a failure to keep an account book showing the credit sales so the same could be kept in the iron safe to be produced in the event of a fire was in violation of the provision in the iron safe clause attached to the policy and made a part of the contract of insurance, and that the method or system employed by the assured in that case, the McCaskey system, was not in substantial compliance with the provision in the iron safe clause. The McNutt case, decided by the old Court of Chancery Appeals, and reported in 45 S. W., 61, and affirmed by the Supreme Court, is distinguished from the facts in the Hughes case, in that the assured in the McNutt case kept such necessary books and records customarily in his iron safe in substantial compliance with the provisions of the policy, but on the night of the fire certain of these books and records, including the inventory, etc., were by mere inadvertance left out of the safe, but the essential facts necessary to arrive at the proximate value of the stock of goods, etc., destroyed by fire had been supplied by procuring from the bank the deposits representing cash sales and other documents, so that the value of the stock of goods could be arrived at by documentary evidence. In the Hughes case there was no attempt to comply with the provisions contained in

518

the iron safe clause with reference to keeping a book record of the credit sales. The distinction, we see, in the Hughes case and the McNutt case, is clear and unmistakable, and the two cases are not in conflict. In fact, Chief Justice Green, speaking for the court in the Hughes case, refers to and cites the McNutt case, and from which it clearly appears that the Hughes case was not intended to overrule the holding by the Court of Chancery Appeals, affirmed by the Supreme Court in the McNutt case. The facts in the McNutt case are very similar to the facts of this case, as nearly so as any two cases could well be. In this case it clearly appears that the fire which destroyed complainant's stock of merchandise, etc., was not the result of any negligence or fault upon the part of complainant. While it is perhaps true that the system of bookkeeping which complainant used in his business was not up to the highest standards, but was in keeping with the system usually employed by small mercantile concerns conducting a business in a small town where the services of an expert bookkeeper are not employed. In McNutt v. Va. F. & M. Ins. Co., supra, the court quotes at length, and with unqualified approval, the following excerpt from an opinion rendered by Judge McCormick in the case of Assurance Co. v. Redding, 15 C. C. A., 619:

"Viewed 'as a set of books' from the standpoint of an expert in that scientific system of bookkeeping which obtains in the business of an insurance company which has pushed its business at least from the chief city in Canada to the obscure hamlet of Greenville, Florida, these books in evidence are primitive, to a degree that may test his temper, if not his skill; but to impartial jurors patiently searching for proof to support a recovery on a contract of indemnity for a loss insured against, and incurred without fraud or fault on the part of the insured, these books tell a plainer story than the expert, unconsciously or strenuously looking to them for ground of forfeiture, was able to read in them. He could make nothing out of their entries to show that the insured had on hand in his store, at the time of the fire, goods to such an amount in value that three-fourths thereof exceeded the amount of insurance written thereon, or to show that the insured had any goods in his store at the time of the fire. To our view, the very imperfections of these books vouch their good faith. It is insisted that the accounts of goods purchased should have set out these specific articles, and the value of each, and that the account of cash sales should have been equally particular as to articles sold, and the price; for, it is argued, the insured may have sold goods at one-tenth of their cost price, for aught that appears in these entries of cash sales. . . . The credit sales are itemized, as it is not

only customary but necessary. Now, when the articles purchased, the goods sold on credit, and these sold for cash, are all itemized, posted, footed up, and balanced, barring moths, rust and thieves, the difference would show the goods remaining; and the time spent, shopwear of the stock, would either be wholly unnecessary, or in the average country store, an expensive and worthless check on unscientific bookkeeping. When the circumstances of these respective parties are impartially considered, it is highly improbable that such a degree of extravagance or of proficiency in bookkeeping on the part of the insured, was in the contemplation of either of them and certainly was beyond the conception of the insured, and cannot be considered to have been in the mind of the agent of the insurer, without a high impeachment of his integrity, for he must have known that such a set of books as the contention now made by his company requires would not be kept.''

Following the above-quoted excerpt from the opinion of Judge Mc-Cormick, the writer of the opinion in the McNutt case uses even stronger and more pointed language in discussing the question as to the unscientific method in which the books of the usual rural merchant are kept.

In the McNutt case the court frankly states that the most serious question presented was with reference to the assured in that case having inadvertantly left certain of the records out of the safe, and which were destroyed. In that case as in the present case, the assured undertook to supply the record of the cash sales and other records. In this case the amount of the last inventory taken within the twelve months' period was contained in the ledger book which was in the safe at the time the other books were destroyed. The itemized inventory was in one of the destroyed books, but the aggregate amount was in the ledger book in the safe, and showed definitely the amount of the last inventory taken within the twelve months' period. It is contended for defendant on this appeal that the production of this book showing the aggregate amount did not meet the requirements of the provision contained in the iron safe clause, and that only an itemized inventory could meet the requirement. We cannot agree to this contention. This was a record entry made after the inventory had been completed and had been transcribed in itemized detail on another book. The inventory had been taken and transcribed into a permanent record book, which book was destroyed in the fire. It had usually been kept in the iron safe. The entry on the ledger that was in the safe stated the aggregate amount of the inventory covering the stock of merchandise, store furniture and fixtures, and the soda fountain and appliances. Under the statute in force in Tennessee and construed by the Supreme Court in the

Whitaker case, and as held by the Supreme Court in the Hughes case and the McNutt case, only substantial compliance is required, and to this extent the authorities cited and relied upon by the defendant are not in accord with the decisions in this State. After the fire occurred the complainant procured and proved copies of all invoices of merchandise bought since the last inventory. This became necessary because the account book in which these wholesale accounts were kept was destroyed in the fire. Objection was made to this evidence, and the exceptions thereto overruled by the Chancellor, and the action of the Chancellor in so ruling is made the basis of certain assignments of error. We think this was clearly competent under the rule permitting secondary evidence to supply a lost or destroyed document. Besides these duplicate invoices would be more reliable than any book entry kept by complainant, which would be but entering onto the books the amount and dates of the purchases. To say the least of it, these duplicate invoices, when properly proved, afforded all necessary information to the defendant as to the amount of new merchandise purchased by complainant since the date of the last inventory taken of the stock. It also appears that the book on which the cash sales and cash receipts were kept was destroyed, and complainant by way of supplying this destroyed record of the cash sales procured the bank in which the complainant made his deposits to furnish a duplicate of all deposits made, and these deposits represented the cash sales except small amounts referred to as petty cash items, which were paid out of the cash drawer. It appears that all items of more than $1 were paid by check, and only small items of freight bills were paid in cash. The cash book which was destroyed in the fire did not undertake to set out in detail the cash sales, but did show the amount of cash received each day. It appears that when any cash was paid out of the drawer a ticket was made of the same and placed in the cash drawer, and the amount of these tickets was added to the cash at the end of the day's business and the aggregate was entered on the cash book. It is shown that these small cash items would amount to less than $100 a year, and such an inconsiderable sum as would not materially affect the cash sales as reflected in the deposits made, if not daily, but regularly in the bank. All the evidence introduced by the complainant with reference to the bank deposits, cash items, etc., was objected to by the defendant, and the exceptions overruled by the Chancellor and his action in so doing was made the basis of certain assignments of error. We think this evidence is competent and material, for the purpose of supplying the evidence of the cash sales destroyed by the fire.

Without reviewing all the evidence in detail, and without any further elaboration on the facts, we think that this case is controlled by

the case of McNutt v. Va. F. & M. Ins. Co., supra. In fact, the present case in many respects is better supported by the facts than the McNutt case.

On the question as to whether complainant's store had been closed for business for the day, the Chancellor found this issue in favor of defendant. Under the facts as above stated, it is doubtful whether the store had been actually closed for business, and was actually closed for business at the time the fire occurred. In the McNutt case the store had been closed for the night, the lights put out, and the owner and the clerk had gone to their homes, and the fire broke out late in the night in an adjoining storehouse, and hence the question was not in that case as to whether the store had been closed for the night at the time of the fire. In this case the clerk, at the time he locked the store door, left the lights burning, and got into the automobile with a friend to go a short distance with the intention of returning in a few minutes. It is true that he states that he left with the intention of returning in a few minutes to put away the books and to close up the store for the night. It is insisted for complainant with much earnestness that this did not constitute a closing of the store for the day, but was temporarily closed for a few minutes' absence and that there remained something further to be done by the clerk before finally closing the store for the night. In this connection it is insisted by complainant that the Chancellor erred in holding that the store had been closed for business for the day. It is clear under the evidence that the clerk, at the time he locked the store door and left, expected to return to the store and open the door and conclude such business as he had left unfinished, and for this reason he left the lights burning in the store at the time he left. He was to be gone but a few minutes, and under the evidence he was not gone but a short time, probably less than half an hour. We think it very probable that upon his return he would have opened the store and would have waited on such customers as may come in before he finally put the books away, put out the lights and locked the door and left the store for the night. However, in the view of the case we have taken, we do not think it necessary or important that this question be definitely decided.

We will add that it is clear from the record that the actual value of the merchandise and property destroyed by the fire exceeded the amount sued for after applying the three-quarter value clause. There is no suggestion of fraud or wrongdoing on the part of complainant. It was an honest loss and in no sense the result of any fault or negligence upon the part of the assured. He had complied in a substantial way with the provisions of the contract of insurance. The insurance company was not left to doubt or speculation as to the approximate amount of the value of the property destroyed. The proof

of the value of the loss was by record evidence, and we think fully supplied the matters contained in the books destroyed, and this documentary evidence, being competent, afforded an easy basis and method of arriving at the approximate value of the property destroyed, without having to rely upon uncertain oral evidence or merely speculative estimates.

It results that all assignments of error are overruled, and the decree of the Chancellor is affirmed. The defendant insurance company and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.