# W. B. FRANKLIN v. FIREMEN'S INSURANCE COMPANY et al.

Middle Section.     February 19, 1927.

No petition for Certiorari was filed.

1. **Insurance. An appraisement of a building which had been totally destroyed and concerning which the appraisers had no knowledge before the fire is invalid unless notice is given to the parties.**

In an action to recover on certain fire insurance policies where the evidence showed that the policies covered an old house which had exceptionally fine woodwork and other fittings which could not be replaced and that the fire had destroyed the building so that it was impossible to tell the nature of the materials from which it was made and appraisers were called to appraise the property who were unacquainted with the property before the fire, and when making their appraisement they did not give notice to the parties or hear any evidence as to the nature of the building, held that the appraisement was invalid.

2. **Insurance. Notice of appraisement not necessary when materials of the building can be determined after the fire.**

The above rule does not apply when the fire has not completely destroyed the building and the appraisers can themselves determine the nature of the materials in the building.

3. **Evidence. The failure to introduce a witness does not raise a presumption against the party where the witness is not his agent.**

In an action to recover on fire insurance policies where the complainant did not offer the testimony of one of the appraisers, held that there was no presumption that the testimony would be valuable against the complainant since he was not the agent or representative of the complainant.

4. **Insurance. Fire insurance policy containing unconditional and sole ownership clause is void if the title is not as represented.**

Where a fire insurance policy contained a clause stating that the policy shall be void if the interest of the assured be other than entire unconditional and sole ownership, the policy is not enforceable if the ownership is other than sole ownership.

5. **Insurance. The above rule does not apply when company has knowledge of actual facts.**

Although a fire insurance policy contains an unconditional ownership clause, if before or at the time of the issuance of the policy the company actually knew that the party to whom the policy was issued was not the sole owner, the policy is not void and it is sufficient if the agent of the company had this knowledge.

6. **Insurance. Evidence. Other facts and statements may be taken into consideration in determining truthfulness of witness' testimony.**

In an action to recover on fire insurance policies where the assured was not the sole owner of the property and he testified that at the time the policy was written, he so advised the agent, and the agent testified that the assured did not tell the true ownership of the property and the evidence further showed that after the fire, the assured had voluntarily told the adjuster the condition of the title to the property, held that in view of these facts and the further fact that the assured would be more likely to remember conversations in regard to his only policy than an agent who wrote many

policies, the Chancellor was justified in believing the assured rather than the agent.

7. **Insurance.** Statute authorizing a penalty for refusal to pay an insurance loss is penal.

The statute authorizing the allowance of a penalty for the refusal to pay insurance policy is penal and therefore must be strictly construed.

8. **Insurance.** Evidence held not to warrant the assessment of a penalty.

Where the payment of a fire insurance policy was contested on the ground that the assured had not advised the company that he was not the sole owner of the property and on the further ground that he refused to accept the award of the appraisers held that the evidence was such as to justify the company in contesting the payment of the policy and therefore the penalty was justly denied.

Appeal from Part II, Chancery Court, Davidson County; Hon. James B. Newman, Chancellor.

Affirmed.

W. E. Norvell, Jr., of Nashville, for appellant.

R. B. C. Howell, of Nashville, for appellee.

FAW, P. J. In this cause, the Chancellor granted to the complainant W. B. Franklin a judgment for $9400, with interest thereon from March 26, 1923 (the date on which the bill was filed) against the defendant Firemen's Insurance Company, and the Insurance Company prayed, obtained and perfected an appeal therefrom to this court.

The aforesaid judgment was the face value of three fire insurance policies issued by the defendant Firemen's Insurance Company, with interest, and complainant also sought by his bill to recover a statutory penalty for the failure of the Insurance Company to pay the amount of the policies without suit. The Chancellor declined to allow a judgment for penalty in any amount, and from that part of the decree the complainant prayed an appeal, which was granted by the Chancellor and perfected by the complainant.

W. B. Franklin was the sole complainant, but, in addition to the Firemen's Insurance Company, there were six other defendants named in the bill, viz.: W. R. Cornelius, trustee, Mrs. Carrie F. Childress, John T. Lindsley, trustee and Mrs. Annie Lindsley Warden, Mrs. Martha I. Franklin Eskridge and W. H. Eskridge. But pro confesso was entered against all of the last-named six defendants except Mr. and Mrs. Eskridge, and they filed an answer in which they approved and acquiesced in the averments and prayer of complainant's bill. Therefore, the only issues arising on the record are between complainant W. B. Franklin and defendant Firemen's Insurance Company, and when we speak of the defendant, without more, it will be understood that the Firemen's Insurance Company is intended.

Vol. IV. T. A.—44.

The Chancellor filed a written "finding of facts and opinion". which (excepting certain additional facts hereinafter stated) contains the essential facts of the case, and which is as follows:

"This is a suit to recover of the defendant Insurance Company on three policies of insurance, aggregating $9400. The defense interposed is that after the loss, there was an appraisement and award of $4375.60, and this sum was tendered the complainant in full satisfaction of the loss, but that he declined to accept it; that the policies are void because the interest of the insured in the property destroyed was not entire, unconditional, unencumbered and sole ownership, and that there was a mortgage on said property held by John T. Lindsley. These conditions of the policies were not waived by an agreement in writing endorsed thereon.

"There was a demurrer to the original bill, which was overruled by Special Chancellor Luck, with the right to rely on the defenses contained in the demurrer, in the answer. The demurrer is incorporated in the answer and the same grounds are set up as defensive matter in the body of the answer.

"The disposition made by the court of the issues made by the answer dispose of the questions raised by the demurrer, they being identical.

"The substantial and controlling facts follow:

"Complainant and his daughter, Martha I. Franklin Eskridge, were the owners, as tenants in common, of the property involved. By the will of Maggie I. Franklin, deceased wife of complainant, this property was devised to the complainant and such children as she might have at her death, equally, with the direction that it be under the entire control of her husband, to be rented or sold by him on such conditions as he might see fit, the proceeds of such sale or lease to be divided between him and her children. At the time of Mrs. Franklin's death, she and the complainant had one child, Martha I. Franklin Eskridge.

"The improvements on this property consisted of a two-story ante-bellum brick building, constructed of very expensive material, with double brick walls, hard pressed brick, and woodwork of poplar material, not available at present because too expensive for use in such buildings.

"Some time anterior to the fire, the interior of the building had been remodeled. Oak floors had been laid, french doors put in, interior woodwork reconstructed, replastered, repapered, and plumbing and electric fixtures installed at an estimated cost of from fifteen hundred to two thousand dollars.

"After the death of his wife, complainant managed the property in accordance with the will, and at all times recognized that his daughter had a half interest therein.

"For a number of years complainant carried no insurance on this property, and was advised by his friend, Mr. McCampbell, to see Brugh, Hartnett & Co. and take out insurance on the property. Complainant called to see this firm, and Mr. Brugh wanted to insure the property without inspecting it, but the complainant insisted on Mr. Brugh seeing the property, and took him out on the premises.

"After an inspection of same, by Mr. Brugh, complainant took out a policy thereon in the sum of $5400 on the house and $2000 on the household goods. The latter policy was subsequently changed for one of the same amount on the house. Mr. Brugh subsequently advised complainant that he should take out more insurance on the property, that $7400 was not sufficient to protect him, as the property was worth from ten to fifteen thousand dollars, and thereby prevailed upon him to take two thousand dollars additional.

"This statement was made by Mr. Brugh to the complainant after he had inspected the premises. The three policies were renewed from time to time, and were in force at the time the fire occurred.

"In April, 1922, the property was destroyed by fire, and all of the woodwork was entirely destroyed except several doors which were saved, and only the outside walls and one of the inside walls were left standing. Much of the brick work around the doors and windows had fallen out. Part of the walls were warped, but the walls, generally, were sound.

"After the fire, complainant made proofs of loss and claimed the entire amount of the policies. The matter was referred to an adjuster, Hunter Davis, who entered into a nonwaiver agreement with complainant with reference to an investigation of the fire, and finally an agreement was reached for an appraisal of the premises. Ira P. Jones was selected by the complainant, and Henry Griffin by the company, and these two arbitrators selected Mr. Graham, as the third party or umpire.

"These gentlemen proceeded to appraise the premises without notice to complainant and without any evidence before them of the nature and character of the construction of the interior of the building. No witnesses familiar with the interior of the building or the character of the building were examined by these gentlemen, nor did complainant have any notice of it. It is revealed by the deposition of Henry Griffin, the appraiser selected by the Insurance Company, that he knew nothing of the interior of the building or the condition of the building before the fire, and did not make any allowance for electric equipment. The information he received on this source was from an old negro on the place.

"The other appraiser, Mr. Graham, did not make any estimates, but simply discussed the question as to whether or not the walls could be used for rebuilding, although he signed the report of the appraisers fixing the value of this loss at $4375.60. Jones, the appraiser selected by the complainant, had, prior to his service on this board, appraised this property, acting for Howard & Co. and had placed the cost of reconstructing this building at $9461, although he signed the award under the appraisal agreement fixing the damage at only $4375.60.

"It appears from a preponderance of the proof that the character of the interior of the woodwork and the electric equipment of this building could not be determined from the parts of the building that were left standing.

"Nothing remained of the woodwork inside or out, and only the outside walls and one of the inside walls were left. No witness testified to the value of the woodwork or finishings before the appraisers.

"The preponderance of the proof establishes that after allowing the value of the walls that were left and the other salvage from the fire, it would take something over ten thousand dollars to reconstruct this building.

"At the time the policies of insurance were taken out on the property, there were mortgages to Cornelius, trustee, and Lindsley, trustee, thereon. Each one of the policies contained the standard mortgage clause attached thereto, making the loss, if any, payable to Cornelius, trustee, but there was no such clause attached to the policies protecting the interest of Lindsley, trustee. At the time these policies were taken out with the defendant insurance company, complainant informed its agents who solicited the insurance, that the title to this property was vested as alleged in the original bill in this cause, and of the existence of the Lindsley and Cornelius mortgages, though the defendant company wrote each one of the policies in the name of, and made the loss payable to, W. B. Franklin. Complainant informed Hunter Davis, a witness for the defendant insurance company and one of its adjusters, after the matter was referred to him for adjustment, as to the title to this property. This statement as to the title was voluntarily made by the complainant after the fire occurred.

"It is insisted by the defendant (1) that there being encumbrances on the property not disclosed by the complainant, that the policies thereon are void and uncollectible; (2) that as the complainant was not the sole owner of the premises, the policies are void and uncollectible under the provisions contained therein with reference to the title to the property; (3) that the award of

the appraisers is binding as to the amount of the complainant's loss. The encumbrance complained of is the Lindsley mortgage.

"It is well settled in Tennessee that an encumbrance of this character on the property insured does not increase the risk under the policy, and, though undisclosed, will not avoid the policy. Hughes v. Millers Mutual Fire Ins. Co., 147 Tenn., 164; Insurance Co. v. Whittaker, 112 Tenn., 151; Insurance Co. v. Estes, 106 Tenn., 472.

"Where an insurance policy contains a clause that the insured is the sole owner of the property and after the loss, it develops that his interest is other than as stated in the policy, the policy is uncollectible. Catron v. Insurance Co., 6 Humph., 176; Insurance Co. v. Crockett, 7 Lea, 728. However, this general rule has its limitations.

"If the insured notifies the insurance company or its agents of the real facts, at or before the time of the issuance of the policy, as to the condition of the title, then, notwithstanding the provisions of the policy that he is the sole owner, the insured can recover, for such knowledge constitutes a waiver of the condition of the contract and the insurer is estopped from asserting the breach of such condition. Insurance Co. v. King, 137 Tenn., 685; Insurance Co. v. Whittaker, 112 Tenn., 151.

"The record in this case discloses that the complainant at all times recognized the interest of his daughter in this property, and that he told Mr. Brugh, the agent who procured the insurance on the building, before the issuance of the policy, of her interest therein, and after the loss, when there was every reason for him to conceal this interest, if he had been so inclined, he voluntarily told Mr. Hunter Davis, the Insurance Company's adjuster and one of its witnesses in this case, of his daughter's interest in this property, after he knew the insurance company had written these policies in his own name.

"Again, it is remarkable that he would have disclosed but one of these encumbrances, there being two mortgages on this property, one to Cornelius, trustee, and one to Lindsley, trustee, and only the Cornelius mortgage was covered by a standard mortgage clause attached to each one of the policies.

"It is further disclosed by the record that after the fire the character of the finishing of the interior work of this building, both wood and brick, with the exception of one interior wall left standing, could not have been estimated by any board unfamiliar therewith without proof. It is true that the outer walls were left standing, but they could in no manner indicate to a person unacquainted with the building the character of the interior finishing and electric equipment, and there is no pretention on the part of

the appraisers in this case that they were familiar with the interior of this building or heard any evidence as to its nature and character, nor that they gave the complainant notice of their meetings, so as to enable him to produce evidence.

"In the case of Continental Insurance Co. v. Garrett, 125 F. R., 592, a case, the facts of which are remarkably similar to the one under consideration, and in which the same Mr. Griffin was an appraiser, Judge Lurton, speaking for the court, said:

" 'In the present case the arbitrators were to ascertain and appraise the sound value of a brick dwelling which had been so completely destroyed by fire as that substantially nothing remained of the woodwork, inside or out. The walls themselves were in part fallen. Thus a mere examination of the premises could not, on the evidence in this record, have informed them as to the character of the finishing of the interior work, and its condition before the fire. The appraisers were experienced contracting builders, but, without some evidence, how was it possible for them to know the sound value or the loss and damage. Under such circumstances, appraisers should give notice to both parties of the time and place of hearing, and require evidence in respect of facts which they could not otherwise know. The mere fact that the assured saw the appraisers on the street, and that he did not ask to be heard, or object to their proceeding without notice, is not a waiver. The appraisers were not in session when complainant saw them, and he was not present when they examined the ruins or acted in any way in the discharge of their duty, and he had no notice of either the time or place of their session. In favor of an apparently just award, many presumptions may be indulged, but in this case the result reached is so apparently unjust as not to justify any indulgent view of the conduct of the arbitrators. If the appraisers heard evidence as to the character and finish of the interior of this house without notice, they were guilty of misconduct. On the other hand, if they undertook to appraise the loss and damage resulting to the assured without other information as to the character of the interior work than that to be derived from such a ruin as this was, they were equally neglectful of their duty, and exhibited an indifference to justice most culpable.'

"It is insisted that the failure of the complainant to call Mr. Ira Jones as a witness, raises the presumption that he would have testified as did the other appraisers. While it is true that Mr. Jones appraised this property before he was selected as arbitrator by the complainant, and afterwards joined in the award fixing the value, it does not follow that the failure of complainant to call him raises the presumption that he would have testified as did the other appraisers. But the fact that this award is in favor of the

defendant's contentions and the failure of the defendant to call him raises the presumption that he would not have testified as did the other appraisers. Standard Oil Co. v. State, 117 Tenn., 618.

"The court is of opinion that the complainant is entitled to recover of the defendant Insurance Company the face value of the three policies together with interest from March 26, 1923, the date the bill was filed, and the costs of this cause.

Decree accordingly.

"Newman, Chancellor."

It appears from a bill of exceptions preserved by the defendant that after the Chancellor's "finding of facts and opinion" was filed, the following occurred:

"The defendant was afforded a reasonable opportunity to examine said findings, did so, and objected and excepted to the findings to the effect that Franklin informed Brugh of the true state of the title; that Jones, complainant's nominee as appraiser, had heretofore appraised the property; that the appraisers could not intelligently act without evidence or information as to the interior construction and, further, that they received no such evidence or information, and that the preponderance of the proof established that, after allowing the value of the walls that were left and other salvage, it would take something over $10,000 to reconstruct the building. The Chancellor overruled each and every one of these objections, to which action of the Chancellor the defendant excepted. The defendant then asked the Chancellor to find:

"1. That when the insurance was taken out, Franklin informed Brugh that he owned the property, and did not disclose his daughter's interest.

"2. That the appraisal agreement was signed by complainant after full consultation with his counsel.

"3. That at Franklin's instance, through his attorney, Mr. Howell, Jones, subsequently selected by Franklin as appraiser, made an estimate of the cost of reconstruction but Mr. Franklin did not see Mr. Jones nor give him any information as to the character of interior construction.

"4. A sufficient portion of the building was standing, with marks thereon, and a sufficient portion of salvage was stored in an outhouse, which the appraisers saw, to enable them to intelligently make a fair estimate both of sound value and damage.

"5. The defendant further requested the Chancellor to find, if he should overrule the request for the fourth finding, just supra, that complainant had not shown by a preponderance of competent evidence that either the damage was equal to or in excess of the face of the policies, or, indeed, that it exceeded $4375, the amount of the award.

"6. That the award was valid.

"That the Chancellor then declined to find any of said requests for different or additional findings except request 3, which the Chancellor was pleased to find. To this action of the Chancellor in declining to find additional facts as requested, the defendant excepted."

The defendant Firemen's Insurance Company and the complainant Franklin have both assigned errors in this court, but the complainant's assignment is directed to the single point that the Chancellor erred in not allowing the penalty sued for. Defendant Insurance Company has filed nine assignments of error which will be considered in the order which to us seems most convenient, without attempting to follow the order of assignment.

1. We concur in the conclusion of the Chancellor that the award of the appraisers was invalid for the reason the appraisers did not afford the parties an opportunity to offer evidence touching the character of the materials and finishing of the interior of the building, and its condition before the fire.

The rule which demands that the parties have an opportunity to offer such evidence is not absolute. If the building had been only partially destroyed, and sufficient of it remained to disclose the size, general character of architecture, and the quantity and kind of materials used in its construction, the appraisers, being experts, could have determined the matters submitted to them from an inspection of the premises. But it is the general rule that where appraisers, unacquainted with the property before the fire, are selected to estimate a loss arising from the total destruction of the property, notice of the time and place of the meeting of the appraisers, and an opportunity to the parties to be heard, are essential to the validity of the award. Carlston v. St. Paul Fire and Marine Insurance Co., 37 Mon., 118; 94 Pac., 756, 127 Am. St. R., 715, 720; Continental Insurance Company v. Garrett, 125 Fed., 589, 592; 5 Joyce on Insurance (2 Ed.), sec. 3253; Note, 47 L. R. A. (N. S.), 1191, 1193.

We agree with the Chancellor that the character of the interior woodwork and the electric equipment of the burned building could not be determined from an inspection of the parts of the building that were left standing. It was, therefore, a total loss, or "the total destruction of the property," in contemplation of the law applicable to fire insurance contracts of the kind involved in this case. "In case of an insurance upon a building under a fire risk, the first principle is, that it is the building, and not the materials of which it is composed, that is covered and therefore total loss does not mean necessarily an absolute extinction of every part and parcel of the property. In such risks there is a total destruction and total loss when, by the peril of fire, the building becomes a

mass of ruins and rubbish, and loses its specific character, and ceases to exist as a building, becoming unfit for use as such, without regard to the fact that even some parts may be left entire, or that a large portion of the building be left standing, and not actually destroyed." 5 Joyce on Insurance (2 Ed.), sec. 3025. See, to same effect, Richards on Insurance Law, sec. 240; 14 R. C. L., pp. 1302-1303; Note, 56 L. R. A., 784, 791; Note, 39 L. R. A. (N. S.), 1182; Note, L. R. A., 1915-E, 618.

We think the case now before us falls directly within the ruling in the leading case of Continental Insurance Company v. Garrett, supra (from which the Chancellor quotes in his opinion), rather than the case of Phoenix Insurance Co. v. Food Co., 294 Fed., 51, cited for appellant Insurance Company. In the case of Phoenix Insurance Company v. Food Company, the court (at page 55) points out the distinction between that case and the case of Continental Insurance Company v. Garrett.

2. The fact that complainant did not offer the testimony of Jones, the appraiser selected by him, did not raise a presumption that the testimony of Jones "would be against the complainant and would agree with Griffin's and Graham's." Jones was not the agent or representative of the complainant. 5 Joyce on Insurance (2 Ed.), secs. 3242 and 3253; 14 R. C. L., pp. 1362-1363; Connecticut Fire Insurance Co. v. Cohen, 97 Md., 294, 55 Atl., 675, 99 Am. St. R., 445; Shawnee Fire Insurance Co. v. Pontfield, 110 Md., 353, 72 Atl., 835, 132 Am. St. R., 449, 453.

3. It is asserted, through an assignment of error, that the Chancellor erred in finding that complainant Franklin informed Mr. Brugh, the agent of defendant Firemen's Insurance Company, when the policies were taken out, of the true state of the title. This presents a very material inquiry in view of ·the condition in each of the policies that it should be void if the interest of the assured be other than entire, unconditional and sole ownership. If the Insurance Company knew the state of the title, and with this knowledge wrote the policies in the name of complainant Franklin alone, it could not, after a fire, take advantage of the fact that complainant was not the sole and unconditional owner of the property; and knowledge of an agent as to a material fact bearing upon a contract which he is employed to solicit or negotiate on behalf of his principal is imputable to the principal. Hale v. Sovereign Camp W. O. W., 143 Tenn., 555, 561, 226 S. W., 1045; Life and Casualty Insurance Co. v. King, 137 Tenn., 685, 702, 195 S. W., 585; 26 Corpus Juris, p. 316, sec. 390; 32 Corpus Juris, pp. 1323-1325.

The manner in which the title was held by complainant Franklin and his daughter, now the defendant Mrs. Eskridge, is stated in

the Chancellor's findings, supra, and will not be repeated further than to emphasize the fact that, under his wife's will, complainant Franklin was vested with the control and management of his daughter's interest in the property, with power to rent or sell it, and he was also the legal guardian of his daughter, who was a minor at the time the insurance was first taken out.

Complainant testifies, with statement of time, place and circumstances, that he told Mr. Brugh, before the first policy was written and while Mr. Brugh was examining the premises, the true state of the title. This is denied by Mr. Brugh, and we have thus a direct conflict in the testimony of these two witnesses, and with no other witness testifying on the point.

Mr. Brugh says it is true that he examined the premises in company with complainant, and he and complainant substantially agree as to the times and places when and where they discussed the matter of insurance on the house in question; but complainant manifests a clearer recollection of the details of the transactions and happenings inquired about than Mr. Brugh, which is not remarkable when it is seen that writing fire insurance was Mr. Brugh's daily occupation, whereas the only fire insurance policies complainant ever had were those written by Mr. Brugh on the property in question. Complainant and Mr. Brugh stand in this record as reputable gentlemen, without a suggestion of impeachment of the character of either for truth and veracity. Mr. Brugh says that it was his uniform custom to ask persons for whom he was writing insurance with reference to the state of the title of the property insured, and that he made such an inquiry of complainant Franklin before he wrote the first policy on the house in question. If, in response to such an inquiry, complainant told Mr. Brugh that he (the complainant) was the sole owner of the property, it is scarcely possible to escape the conclusion that complainant deliberately and purposely misrepresented the facts, because he knew at that time the true state of the title. As suggested by the learned Chancellor, such willful misrepresentation and active concealment are not consistent with the manner in which complainant promptly and voluntarily disclosed to Mr. Davis, the adjuster, the fact of his daughter's interest in the property. Moreover, if complainant had been guilty of willful misrepresentation and active concealment of the facts with respect to the title, it is not probable that he would have forgotten that he had done so, and it would follow, on that hypothesis, that his testimony given in this case is knowingly false.

We believe that both complainant and Mr. Brugh have attempted to testify truthfully, and that the conflict in their testimony results from a difference in recollection of a conversation which occurred eight or nine years before their testimony was given.

Without extending this opinion by a further review herein of the testimony of complainant and Mr. Brugh, we concur in the finding of the Chancellor that complainant told Mr. Brugh, before the issuance of the policy, of his daughter's interest in the property.

4. It is assigned as error that the Chancellor erred in permitting the complainant, after the proof was completed, to contradict the allegation of his original bill by filing an amendment thereto averring that he had informed the agent of defendant Insurance Company of the true state of the title when the policies were written; and that it was error to permit the complainant, after said amendment and after said original proof was taken, to testify in support of the amendment to his original bill, over the objection of the defendant Insurance Company, there being no affidavit filed.

The predicate of these two assignments of error is that the amendment contradicted the original bill. We do not think so. As we read the bill and the amendment, the amendment contains an affirmative allegation concerning a matter about which the bill is silent, and which allegation is not necessarily repugnant to anything in the original bill. It was within the discretion of the Chancellor to allow the amendment, and, the amendment having been allowed, it was proper to permit the parties to offer proof upon the issue raised by the bill as amended and the answer thereto.

5. All of the assignments of error filed by the Insurance Company are overruled. Appellant Insurance Company has made some assignments of error which it has not attempted to support by argument or authority, and which we do not think are meritorious. In the absence of discussion of such assignments in the brief, they are overruled without discussion in this opinion.

6. As before stated, the complainant, as appellant, has offered but one assignment of error, viz.: that the Chancellor erred in not allowing complainant the penalties provided by law and prayed for in the original bill.

The penalty statute (Acts of 1901, chap. 141) provides that "the several insurance companies of this State, and foreign insurance companies and other corporations, firms, or persons doing an insurance business in this State, in all cases when a loss occurs and they refuse to pay the same within sixty days after a demand shall have been made by the holder of said policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss and interest thereon, a sum not exceeding twenty-five per cent on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy; and, provided, further, that such additional

liability within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.'' See Shannon's New Code, sec. 3369a141.

This is a penal statute and must, therefore, be strictly construed. Insurance Co. v. Kirkpatrick, 129 Tenn., 55, 72, 164 S. W., 1186; DeRossett Hat Co. v. London, etc., Insurance Co., 134 Tenn., 199, 210, 183 S. W., 720; Kimball v. Parks, 151 Tenn., 103, 107, 268 S. W., 117.

We do not think that the proof in the present case justifies the conclusion that the refusal of the defendant Insurance Company to pay the loss here involved was in bad faith. Moreover, the amount of the penalty is to be ''measured by the additional expense, loss and injury'' entailed upon the insured by such refusal of the insurer, and there is no proof in this case of the amount of any additional expense, loss or injury thus entailed. Complainant's assignment of error is overruled.

7. It results that the decree of the chancery court is affirmed, and a decree will be entered granting a recovery in favor of complainant Franklin and against the defendant Firemen's Insurance Company, and the surety on its appeal bond, for $9400, with interest thereon from March 26, 1923 (the date on which the original bill was filed), and for the costs of the cause, including the costs of the appeal.

Crownover and DeWitt, JJ., concur.