L. H. PHILLIPS et al. v. NORTH RIVER INSURANCE COMPANY.

Western Section. November 13, 1931.

Petition for Certiorari denied by Supreme Court, March 26, 1932.

Pigford & Key, of Jackson, for appellant.

Hu C. Anderson and Victor Woerner, of Jackson, for appellee.

HEISKELL, J. This is an appeal by the North River Insurance Company, defendant below, from a decree of the Chancery Court of Madison County, reforming a policy of fire insurance issued by it and rendering judgment in favor of complainants on said policy as reformed, in the sum of $1714.25 and fifteen per cent penalty and costs.

On January 14, 1928, defendant issued its policy insuring the complainant, L. H. Phillips, in the sum of $1500 against loss or damage by fire to a certain dwelling house in Jackson. The policy bore a loss clause payable to complainant Hopper, as his interest might appear. The insured, Phillips, having moved to Oklahoma, the policy was delivered to complainant, Summer. The property had been insured for several years through the same insurance agency in Jackson and the present policy was a renewal of former policies.

The policy provided that if the interest of the insured in the property covered by the policy be other than unconditional and sole ownership; and if the subject of the insurance be a building on ground not owned by insured in fee simple, the entire policy should be void.

The property was destroyed by fire in January, 1929.

Upon investigation it developed that instead of the named insured, L. H. Phillips, being the sole and unconditional owner of the property insured, the same was owned by the complainants, L. H. Phillips, Marge Phillips and H. D. Summer, as tenants in common. Upon discovery of this fact, defendant denied its liability under said policy.

Complainants thereupon filed the original bill in this cause, seeking first to have the policy reformed so as to name as the insured therein, the complainants, L. H. Phillips, Marge Phillips and H. D. Summer, instead of L. H. Phillips alone, and then to have a recovery for the full amount of the policy, together with interest and statutory penalty.

Reformation was sought on the theory that defendant's agent was informed as to the true ownership of the property and that he, as well as complainants, intended that the names of all the owners should be inserted in the policy. The complainants Phillips and wife and Summer sought a decree for the full amount of the insurance with interest and the statutory penalty and the complainant, Dr. J. D. Hopper, sought a decree for the amount of his secured indebtedness remaining unpaid, with interest and penalty.

The defendant insurance company filed an answer denying that its agent, McClamroch, was informed as to the true ownership of the property and that he intended to insert the three names in the policy, also denying that the loss was total. Defendant admitted the issuance of the policy sued on, to Phillips with a loss clause in favor of complainant, J. D. Hopper, mortgagee, attached thereto. The answer denies liability, because the true ownership of the property was not stated in the policy. Defendant offered no proof in the case.

The Chancellor found in favor of the complainants and entered a decree reforming said insurance policy and rendering a decree in favor of complainants for the full amount of said policy, together with interest and fifteen per cent penalty, aggregating in all the sum of nineteen hundred seventy-one and 40/100 dollars ($1971.40). From this decree the defendant has perfected an appeal to this court.

The five assignments of error may be condensed into two. First, the court erred under the law and the facts, in reforming the policy and holding defendant liable on the policy. Second, if defendant was liable, it was error to add the penalty.

As the defendant company offered no evidence, it is for the court to say whether or not the proof submitted by the complainant, authorized the decree of the Chancellor. This proof showed the following state of facts:

The property insured was owned by L. H. Phillips and wife, Marge Phillips, and H. D. Summer, as tenants in common.

The property was purchased by L. H. Phillips and wife and H. D. Summer in August, 1925, deed was recorded August 10, 1925, and of the purchase money, the sum of $1842.25 was represented by notes of twenty dollars each, maturing monthly after the purchase, and numbered from one to ninety-two, except the last note which was for twenty-two dollars and twenty-five cents. These notes were secured by deed of trust on the said property, and were transferred to the complainant, Dr. J. D. Hopper on April 6, 1926, and have since been owned by him. These notes and interest, as shown by simple calculation, amount to $1256.35. From the date of the purchase of the property by L. H. Phillips and wife, Marge Phillips, and H. D. Summer, the insurance on the dwelling was carried in the agency of W. E. McClamroch, but the proof does not disclose positively what company was carrying the property prior to the date of the policy sued on in this case. The record does not disclose in whose names the policies had been written prior to the policy sued on in this case.

Along about the first of January, 1928, the complainant H. D. Summer, called W. E. McClamroch over the phone and asked him if the policy on the property owned by L. H. Phillips, Marge Phillips and H. D. Summer had expired, and was informed that the policy expired some time in the early part of that month. McClamroch told Summer that he would renew the policy and keep it in force and that he would be fully protected.

The policy was issued on January 14, 1928, in the name of J. H. Phillips alone, and on April 11, 1928, was delivered to complainant, H. D. Summer, who put it away without looking at it. The policy remained in the possession of McClamroch from January 14, 1928, to April 11, 1928. The policy contained the mortgage clause in

favor of J. D. Hopper as stated. Summer says he supposed the policy contained the names of all the owners and throught so until after the fire.

It is conceded that the loss was total. That there was proof of loss, demand for payment and denial by defendant.

The first contention of the complainants below, the appellees in this court, is that even if the contention of appellant is sustained as to the owners of the property, this would not affect the rights of the mortgagee, J. D. Hopper, to recover under his standard loss clause. We think this contention is sustained by the authorities cited: Acts of 1925, Ch. 123, Sec. 1; National Liberty Ins. Co. v. Rogers, 2 Tenn. App., 253; Collins v. Michigan Com'l. Underwriters, 6 Tenn. App., 528; Laurenzi v. Atlas Ins. Co., 131 Tenn., 644, 176 S. W., 1022.

We presume counsel for appellant did not see his way clear to answer these authorities and therefore neither in answer below nor by assignment of error in this court, makes any special issue as to the right of the mortgagee, Hopper, and does not in his brief discuss this feature of the case, or consider the authorities cited by opposing counsel.

This leaves to be considered the question as to the right of the three owners to recover on the policy and whether it was error to allow the penalty. It is earnestly contended for the appellant that there could be no reformation of the policy because whatever mistake there might have been it was not a mutual mistake. On the other hand counsel for appellees insist that where the parties to a contract intend it to read a certain way and it does not, the court will reform it so as to make it express the intention of the parties and besides that under the facts of this case the court could give a decree in favor of the owners of the property without reforming the policy.

Counsel for the defendant insurance company cites a number of authorities to support the abstract proposition that in order to authorize a court of equity to reform a written instrument there must be shown a mutual mistake or the mistake of one party accompanied by fraud of the other party.

Counsel for complainants, without controverting the authorities cited by counsel for the defendant, cite other cases which in decreeing a reformation use language more applicable to the present case.

"Where the defendant was aware not only that the instrument did not express the real agreement, but that the plaintiff was ignorant of a discrepancy between the instrument and the agreement, the case is one for reformation.

"The fundamental thought controlling in a question of this sort is the ascertainment of the true purpose and intention of the

parties, and whether or not that purpose and intention is expressed in the instrument under consideration, whether the controversy be one for construction or a reformation of an instrument.

"In another case, the purpose of the parties at the time the deed was made would determine the effect of the instrument, for the primary rule of construction of contracts is to carry out the intention of the parties thereto.

"Decisions of undoubted authority hold that where an instrument is drawn and executed that professes or is intended to carry into execution an agreement which is in writing or by parol, previously made between the parties, but which by mistake of the draftsman, either as to fact or law, does not fulfill or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement, the reason of the rule being that the execution of agreements fairly and legally made is one of the peculiar branches of equity jurisdiction, and if the instrument intended to execute the agreement be from any cause insufficient for that purpose, the agreement remains as much unexecuted as if the party had refused altogether to comply with his agreement, and a court of equity will, in the exercise of its acknowledged jurisdiction afford relief in the one case as well as in the other, by compelling the delinquent party to perform his undertaking according to the terms of it and the manifest intention of the parties." Alexander v. Shepard, 146 Tenn., 90-110, 240 S. W., 287.

In Molieire v. Pennsylvania Fire Insurance Co. (Pa.), 28 Am. Dec., 675, it is said:

"A mistake in a policy may be rectified, when it clearly appears from the label or other satisfactory evidence, that it was reduced to writing in terms not conformable to the real intention of the parties: Motteux v. London Assur. Co., 1 Atk., 545; Henckle v. Royal Exch. Assur. Co., 1 Ves., 317. I see no reason why the same thing may not be done in the present instance, by correcting the policy according to the verbal description furnished to the secretary, if the evidence shows that he omitted a material part of that description. The memorandum, which has been termed the order, possesses no greater efficacy than the policy, and may, itself, be corrected in the same manner. It is immaterial whose act it was; it is sufficient if the evidence shows, that it did not conform to the intentions of the parties, whether by the mistake, or inadvertence of the person who drew it up. It may be remarked, however, that by the conditions annexed to the policy, the secretary is designated as the person

to whom the description is to be furnished. If he, acting in this capacity, undertakes to reduce the verbal particulars to writing, and file them as a memorandum or order, the insured has a right to expect he will insert all that is material; and if he omits to do so, I shall deem it his act, and not the act of the insured, and that the Company would in equity, be precluded from setting up this omission, as an objection to a recovery in case of loss, in the same manner as where the policy is not made conformably to the order. The evidence to support such an allegation, ought to be clear and satisfactory. But of that, the jury were to judge. I am of opinion that the evidence was properly received, and that the rule to show cause why a new trial should not be had, be discharged.''

An insurance company is chargeable with the mistake of its soliciting agent in filling up an application. Insurance Co. v. Williams (Ohio), 48 Am. Rep., 474.

A bill may be maintained to reform a written policy after loss has actually happened, upon the ground that it does not express the intent of the parties contracting. Thomas Snell et al. v. The Atlantic Fire & Marine Insurance Co., 98 U. S., 85-98, 25 Law Ed., 52.

Where a policy of insurance negotiated on behalf of a firm, is made out by mistake in the name of the partner applying instead of the partnership, a court of equity will decree its reformation so as to cover the partnership interest, even after loss. Keith v. Globe Ins. Co., 52 Ill., 518, 4 Am. Rep., 624.

Lippincott v. Ins. Co. (La.), 23 Am. Dec., 467, holding that an error, in reducing a contract of insurance to writing, may be corrected by the court.

''Most courts hold that a policy may be reformed where it does not conform to the agreement of the parties though the mistake, so far as the company is concerned, was that of a mere soliciting agent with no power to issue a policy.'' 14 R. C. L., p. 902, sec. 80; 11 L. R. A. (N. S.), 357, and note.

After all, the question is not so much as to the rule as the application of the rule to different cases. In some cases it is very evident that the mistake was all on one side. In other cases it is just as plain that the mistake was mutual. Between these two extremes many cases arise in which it is difficult to determine to which class they belong, and in this territory the courts have been rather disposed to find mutuality in order to do equity rather than the contrary in order to work iniquity. It is not strange that a court of equity should so behave. It was born that way.

We start in the present case with the presumption that both parties, the owners of the property and the insurance company desire to make a valid contract of insurance, one that will protect the

owners of the property from loss in case of fire. H. D. Summer, one of the three owners, says that he called up the agent, McClamroch, and asked him if the policy on the Shelby Street property owned by L. H. Phillips, Marge Phillips and H. D. Summer had expired and that the agent told him the policy would be renewed and he, Summer, would be protected. If this was not true, the defendant could have offered the testimony of its agent in contradiction. If the agent knew who the owners were and intentionally put in only one name, it was a fraud, and if he inadvertently omitted the other names and Summer thought the policy contained all the names, was it not a mutual mistake? Taking all the circumstances of the case, Summer and McClamroch acquainted with each other and certainly both desiring to make a valid contract of insurance to protect the real owners of the property, can we think of the result, a void policy, as anything else than a mutual mistake?

But it is contended for complaints that even without a reformation of the policy in this case, the Chancellor could reach the same result and pronounce the same decree. To support this contention, the following cases are cited:

"As a general rule, where an insurer at the time of the issuance of a policy has knowledge of existing facts, which if insisted upon would invalidate the contract from its inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with such facts, and the insurer is estopped thereafter from asserting the breach of such conditions."

"The general rule applies where the agent soliciting the insurance knows of the existing facts, such knowledge being imputable to the insurer."

"Where an insurance company, when a policy is issued, has information which, if pursued with reasonable diligence, would lead to a discovery of the true state of facts regarding the health of insured or other matter existing at the time upon which it is sought to base a forfeiture of the insurance or a defense, it is estopped to assert such forfeiture or such defense."

"The reason of the rule is stated in the note in a quotation from Gurnett v. Atlas Mutual L. Insurance Co.; thus:

" 'The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into thinking his property is insured' when it is not, and to have taken his money without

consideration.' '' Life & Casualty Ins. Co. v. King, 137 Tenn., 685, 195 S. W., 585.

This was a life policy but the principle is applicable in fire insurance cases and has been followed in fire insurance cases.

In the case of Insurance Company v. Whittaker, 112 Tenn., 151, 79 S. W., 119, it is held:

"Where the applicant for insurance states a matter truly to the agent of the insurance company, but the agent puts it down wrong, and the application is signed by the applicant without reading the same, it is competent to prove such facts, notwithstanding the application, and when such facts are proved, the insured is exonerated from the charge of misrepresentation."

And further in the same case it is said:

"Where the legal title of property insured is in one member of the firm, and not in the firm, and the agent of the insurance company is so informed, but he puts it down in the application as belonging to the firm, which application is signed without being read, testimony is competent to show the truth and to exonerate the assured from the charge of misrepresentation."

The case of Franklin v. Fire Insurance Company, 4 Tenn. App., 688, is a case very similar to the case at bar, and in that case it is said:

"Where an insurance policy contains a clause that the insured is the sole owner of the property and after the loss, it develops that his interest is other than as stated in the policy, the policy is uncollectible. Catron v. Insurance Co., 6 Humph., 176; Insurance Co. v. Crockett, 7 Lea, 728. However, this general rule has its limitations."

"If the insured notifies the insurance company or its agents of the real facts, at or before the time of the issuance of the policy, as to the condition of the title, then, notwithstanding the provisions of the policy that he is the sole owner, the insured can recover, for such knowledge constitutes a waiver of the condition of the contract and the insurer is estopped from asserting the breach of such condition. Insurance Co. v. King. 137 Tenn., 685; Insurance Co. v. Whittaker, 112 Tenn., 151, 79 S. W., 119."

This leaves for consideration the question as to the penalty. Counsel for the defendant company insists that no penalty should have been allowed because there is nothing to show that the defendant did not act in good faith in contesting the policy. The case of Silliman v. Life Insurance Co., 135 Tenn., 646, 188 S. W., 273, is relied on. In that case the court said:

"The case turns on the construction of the words 'not in good faith' as used in the first section of Chapter 141, Acts of 1901, page 248. The Insurance Company has appealed from a

decree awarding against it a recovery for a certain sum as a penalty denounced by the act, and insists that under the evidence, which is free from material dispute, and under a correct construction of the Act, and particularly the words above quoted, that the decree is erroneous.

"We think the point is well made. The words 'not in good faith' are antithetical in meaning to the words 'in good faith.' The words 'not in good faith' imply a lack of good or moral intent as the motive for the refusal to pay a loss. They describe the state of mind which underlies and causes the act of refusal to pay. It is the existence of this state of mind as the cause of the act, and the resulting damage to the victim of the act, which the statute penalizes, just as our laws, intended to punish and suppress crime, look, not to the act which damages society and perhaps destroys its victim, but to the intent or motive which caused the act and the resulting public and private damage.

"It was not the purpose or intent of the legislation embodied in section 1 of the act that refusal to pay a demand, made by a policy holder after occurrence of a loss and within sixty days after making the demand, should, at all, events and without more, confer on the policy holder a right to the penalty. Such is by no means a true construction of the words employed. The right to recover is not an absolute one. It is conditional. There can be no recovery of the penalty where the right to recover the face of the policy has been forfeited by nonpayment of the premiums at their due date. Thompson v. Insurance Co., 116 Tenn. (8 Cates), 557, 92 S. W., 1098, 6 L. R. A. (N. S.), 1039, 115 Am. St. Rep., 823.

"In another of our cases the conditional character of the right to recover the penalty is pointed out, and it is said:

" 'The statute does not penalize insurance companies for defending suits brought against them, even though they should ultimately lose.' . . . Grain Co. v. Weaver, 128 Tenn., 609, 163 S. W., 814."

To same effect is Pacific Mutual Life Ins. Co. v. McCreary, 161 Tenn., 389.

It was contended in the Silliman case in support of the penalty, that the company and its counsel should have known the law which fixed liability and not have caused a suit. The court said in substance that in view of the difference of opinion of courts as to the law it was not any evidence of bad faith for counsel to defend a case and lose it.

In the present case the fact that able and honest counsel have made an argument for defendant which required so many pages from op-

posing counsel as well as from the court to answer, cannot fail to impress us as going to show good faith in making the defense.

Counsel for complainant in favor of the penalty cites Insurance v. Whittaker, 112 Tenn., 152; Thompson v. Life & Accident Co., 128 Tenn., 526, 162 S. W., 39; Edington v. Ins. Co., 134 Tenn., 198, 183 S. W., 728.

The first of these cases was a jury case. The penalty was allowed in the verdict and approved by the court and the only objection made in the upper court was that the Acts of 1901, Ch. 141, allowing the penalty was unconstitutional.

In the next case the only question made on appeal was that the penalty could not be allowed because the suit was brought within sixty days and the court held that the company having refused payment, the insured was not required to wait sixty days before bringing suit.

The Edington case was tried on pro confesso and the Chancellor allowed a twenty-five per cent penalty. The bill alleged good grounds for the penalty, but the Supreme Court said there was no proof of additional expense or loss and therefore denied all the penalty except an attorney's fee.

Not one of these cases has anything to say about what state of facts will support the addition of a penalty to the judgment or decree. On the other hand the case of Silliman v. Ins. Co., 135 Tenn., 646, and cases therein cited, we think show that in a case like the present, the penalty should not be allowed. See also Ins. Co. v. McCreary, 161 Tenn., 389, 32 S. W. (2d) 1052.

It is argued that the penalty can be supported as to complainant Hopper, because there was no specific defense as to his claim. But Dr. Hopper does not prove any expense or loss. He does not even say he had to become liable for attorney's fees, as complainant Summer said he had to do.

The result is, all assignments of error are overruled except as to the penalty which is sustained, and the decree is affirmed except as to the penalty which is disallowed. Defendant will pay the cost of appeal.

Owen and Senter, JJ., concur.